ULMER MOORE v. ROBERT DIETHRICH.

183 So. 2.
Opinion Filed August 2, 1938.

*B. K. Roberts* and *H. H. Wells,* for Plaintiff in Error; *W. C. Hodges* and *Whitfield & Whitfield,* for Defendant in Error.

CHAPMAN, J.—This cause is here on writ of error issued under date of March 13, 1937, directed to the Circuit Court of Leon County, Florida. The transcript shows that on

the 31st day of March, 1936, plaintiff filed his declaration consisting of one count alleging personal injuries sustained due to the negligent operation of a motor vehicle by the defendant on February 2, 1936, on State Highway No. 19 in Leon County, Florida. The defendant, on November 30, 1936, filed five pleas to the declaration: (1) not guilty; (2) that D. L. Hood and plaintiff were engaged in a joint enterprise; (3) contributory negligence on the part of D. L. Hood with the plaintiff while engaged in a joint enterprise; (4) contributory negligence; (5) a special plea.

The cause was heard by a jury on the 14th day of December, 1936, and plaintiff adduced considerable testimony showing: (a) plaintiff's injury; (b) a curve of the road at the *locus in quo;* (c) the effect of the impact of the cars from which a possible excessive rate of speed could have been inferred by the jury.

The transcript shows that when plaintiff announced that no further testimony would be offered except in rebuttal, counsel for defendant moved the court to direct a verdict in behalf of the defendant on a number of grounds, and the court having signified its intention to sustain the motion of the defendant below and direct a verdict in his behalf, counsel for plaintiff moved the court to be permitted to take a non suit with bill of exceptions, which was by the trial court granted.

After an amendment of the transcript of the record herein having been allowed and approved by this Court, the cause is here for decision on the merits of the said appeal.

The lower court was about to sustain the motion of the defendant for a directed verdict and announced its intention so to do, when plaintiff was permitted to take a non suit with bill of exceptions. A verdict for the defendant should never be directed by the court unless it is clear that there is no evidence whatever adduced that would in law

support a verdict for the plaintiff. If the evidence is conflicting, or will admit of a different reasonable inference, and if there is evidence tending to prove the issue, it should be submitted to the jury as a question of fact to be determined by them, and not taken from the jury and passed upon by the court as a question of law. See Cameron, etc., Co. v. Law-Engle Co., 98 Fla. 920, 124, So. 814; McKinnon v. Johnson, 57 Fla. 120, 48 So. 910; Starks v. Sawyer, 56 Fla. 596, 47 So. 513; Florida Cent., etc., R. Co. v. Williams, 37 Fla. 406, 20 So. 558; Southern Exp. Co. v. Williamson, 66 Fla. 286, 63 So. 433.

The question for determination here is: Has the plaintiff adduced sufficient evidence to show actionable negligence on the part of the defendant?

The accident here occurred on Road No. 19, the Jackson Bluff Road, about one and one-half miles east of Captain Finley's. The place of the collision was a curve and slightly on a hill. D. L. Hood, Ulmer Moore and a Miss Sherman were riding in a Chevrolet car. The car was traveling in the direction of Tallahassee around 45 miles per hour when it collided with a C. C. C. truck, and in so doing knocked the Chevrolet car around until it was headed north although it was traveling east at the time of the collision. The Chevrolet car was on the highway when the Dietrich car came around a curve and up the hill and collided with the Hood car. It is reasonable to assume that the defendant's car was traveling at a rather fast rate of speed as shown by the impact with the Hood car. Hood testified as follows:

"Q. What evidence was there, and where was it, of your car having been struck?

"A. I have a two-door 1935 Chevrolet, and the right of his car hit just back of the hinges, where the door is at-

tached to the car, and the other side hit just about the door handle.

"Q. He hit you then just about the center of your car?

"A. Yes, just about the center.

"Q. What did it do to that side of your car?

"A. It just crushed the whole side in, where it hit, the frame and all.

"Q. About how far off line did it bend the frame of your car?

"A. The frame must have been bent at least six or eight inches off line where it hit.

"Q. Does your car, the 1935 Chevrolet, have a particular type of frame?

"A. Yes, it does.

"Q. What is that frame known or designated as to its type?

"A. The mechanics call is a "KY" frame. It is reenforced.

"Q. And that reenforced frame, you say, was bent six or eight inches off line?

"A. Yes.

"Q. How badly was the side of your car crushed in?

"A. It was crushed in so far that it doubled the right front seat up. It was doubled up to where there wasn't but about that much space (indicating) after it was crushed in.

"Q. Your car was thrown around to the left?

"A. Yes.

"Q. So that it was in the path of this approaching car of Mr. Dietrich's?

"A. Yes.

"Q. Was there any indication on the side of that car of yours to show whether his right side or his left side hit you first?

"A. Not that I could tell. It looked like it all hit at once.

"Q. So that, from what you have just testified, your car must have been thrown directly across the road, in his path?

"A. That is right.

"Q. Did you see Dietrich's car approaching?

"A. No sir, I did not, it was on a curve, and he was on me before I saw it. * * *

On direct examination Ulmer Moore, the plaintiff, testified:

"Q. What happened to the car after you sideswiped the C. C. C. car?

"A. That slowed us down some, and in the meantime he put on the brakes, and that swung us around on the left side of the road.

"Q. Was the car in which you were riding moving at the time when it was struck by Dietrich's car?

"A. I don't think so; it was moving very little, if any.

"Q. And the position of that car was at right angles to the direction in which Dietrich's car was approaching?

"A. Yes.

"Q. About how far behind this C. C. C. truck was Dietrich?

"Q. I didn't see his car until after we had gotten across the highway, kind of.

"Q. Could you form some idea of the speed at which he was traveling?

"A. No, not much.

"Q. What space of time elapsed between the time the C. C. C. truck sideswiped you, and this other car hit you?

"A. I don't think I could be a judge of that.

"Q. Do you know how far down the road the C. C. C. car traveled after it struck you, and what its position was when it came to rest?

"A. No.

"Q. You couldn't give some idea of the period of time between the time the C. C. C. car struck you, and Dietrich struck you?

"A. Well, Buck had gotten his car under control—he had time to do that. The swerving around had almost turned us over, and he had gotten his car under control, and well across to the side of the road, at right angles, when this car came into us, before I had time to realize it.

On cross examination Ulmer Moore testified: * * *

"Q. Then you got off the entire side of your road.

"A. I am not sure, but we were on this edge I know.

"Q. Isn't it a fact that Buck Hood was liquored up, and zigzagging around?

"A. No sir.

"Q. Someone hit that C. C. C. car, didn't they?

"A. Yes.

"Q. There wasn't anyone but Hood there to hit them, was there?

"A. He couldn't have hit them if they hadn't been on our side of the road.

"Q. Now, do you know which one of these cars sideswiped the other one?

"A. We hit each other. I don't understand the question.

"Q. The C. C. C. car was going west?

"A. Yes.

"Q. And Hood was coming east?

"A. Yes.

"Q. Now, which one hit the other?

"A. We sideswiped.. We hit each other.

"Q. · But one must have sideswiped the other?

"A. He was on our side of the road.

"Q. Now didn't Mr. Hood sideswipe that car?

"A. I wouldn't say that.

"Q. Did you see Dietrich?

"A. Yes.

"Q. He didn't sideswipe you, did he?

"A. No.

"Q. Then it was either your car that sideswiped the C. C. C. car, or the C. C. C. car sideswiped you?

"A. Yes.

"Q. It wasn't Dietrich's car?

"A. No. * * *

* * *

### Redirect Examination

"Q. State whether or not Dietrich hit you a very hard lick with his car?

"A. Yes, he did hit us a very hard lick.

"Q. State whether or not he ran into the car you were in, and hit it a hard enough lick to put you in the hospital for nine or ten weeks?

"A. He did."

While the testimony is silent as to the speed of the Dietrich. car, it is clear that it occurred on a curve of the road and on a small hill or slight elevation of the road. The force of the impact caused considerable damage to the car plaintiff was riding in and at the same time injured the plaintiff to such an extent that it required some time in a hospital for recovery. We have presented here a very close question. It does appear, however, from plaintiff's testimony that from the injury or damage to the car in which plaintiff was riding when hurt, the personal injuries sustained by him, coupled with the general topography of the

*locus in quo,* presents a question of negligence on the part of the defendant that should be settled by a jury. See authorities, *supra.* The judgment appealed from is reversed.

ELLIS, C. J., and WHITFIELD, BUFORD and CHAPMAN, J. J., concur.

BROWN, J., dissents.