60 So.2d 179 (1952)
HARDWARE MUT. CAS. CO. et al.
v.
TAMPA ELECTRIC CO.
Supreme Court of Florida, Special Division B.
August 5, 1952.
Shackleford, Farrior, Shannon & Stallings, Tampa, for appellant.
Knight, Thompson, Knight & Bell, Tampa, for appellee.
THOMAS, Justice.
Inasmuch as the judge charged the jury to return a verdict for the defendant, when the plaintiff's evidence had been introduced, we must go immediately to the transcript to ascertain the circumstances that surrounded the death of Cleve Lewis, husband of Elizabeth Lewis. In doing so we will interpret the testimony in favor of the appellant giving it the benefit of all intendments and reasonable inferences.
It was admitted on the eve of the trial that Cleve Lewis was electrocuted when he came in contact with two uninsulated wires of Tampa Electric Company, one conducting one hundred ten, the other two hundred twenty, volts of electricity to the home of Joe Cullura, situated in a citrus grove.
The rest of the facts we get from the record. The wires were installed about eight years before the unfortunate occurrence. They were fifteen feet above *180 the ground and dark in color. In the eight years following the installation the tangerine tree where the victim was gathering fruit at the time of his death had so grown that but a few inches separated the upper branches from the wires, with a small branch of a limb in between the wires. As one witness put it, the wires were "pretty close to the tips of the limb."
When the man in charge of the picking crew discovered Cleve Lewis slumped over the wires at the top of the tree he rushed to Mr. Cullura's home and gave the alarm. The grower hurried to the scene, slapped the ladder to see if it carried electrical current, and feeling none pulled it away causing Lewis to tumble to the ground. He then administered artificial respiration until a doctor arrived. The physician determined that the man was dead and that the inner part of his right arm from wrist to pit was burned.
The picture may become finished with the testimony of the foreman who sent Lewis up the tree, discovered him later lying on the wire, and summoned the grower. He was supervising a crew of about a dozen men. He had assigned Lewis to the task of gathering fruit from four trees. The wires, he said, ran "awfully close to the east side * * *" of two of them, so he cautioned Lewis to be careful. He testified that when he returned and discovered Lewis lifeless "the ladder had the wires pushed into the tree."
The judge concluded that there was no evidence to establish negligence in the first place and that the victim had been contributorily negligent in the second place; therefore he directed a verdict of not guilty.
At the stage of the trial when the motion for an affirmative charge was made the judge was empowered to grant it only if there was no testimony that would support a verdict for the plaintiff. Sec. 54.17, Florida Statutes 1949, and F.S.A. This was the rule he followed as is manifest from his comment that prefaced his ruling. He said to the jury that he could not "see any negligence." Then he added: "With a 24 foot ladder upon a wire 15 feet high, after having been warned of it, it looks to me like as a matter of fact there is contributory negligence."
These remarks pinpoint the issues presented by the pleadings, the salient facts developed in the evidence and the pivotal questions treated in the briefs.
The declaration contained charges, in substance, that the defendant negligently maintained wires carrying electricity, of sufficient strength to kill, amongst the branches of citrus trees so that the lives of persons working there were periled. Parenthetically, we may say that we shall ignore the appellee's criticism of the pleading because the record does not show that there was any attack on it and does not disclose any cross assignment of error.
The defendant pleaded that it was not guilty, and that Cleve Lewis "knew, or by the exercise of reasonable care * * * should have known of the presence of the electrically charged * * * wires * * *; that he negligently omitted to use due care to avoid contacting said wires and by such omission contributed to causing his death." The first plea put in issue the defendant's negligence; the second furnished a basis for proof by the defendant that even if it had been negligent the person killed had contributed appreciably to his own destruction. So, at the time of the directed verdict it was necessary to conclude either that the plaintiff's own testimony utterly failed to show that the defendant had been guilty of negligence, or that Cleve Lewis, wholly or in large part was the victim of his own negligence.
Now let us analyze the testimony relevant to the declaration and pleas keeping within the narrow sphere the statute defines in circumscribing the power of judges to tell juries what verdicts they may sign.
The testimony seems to us to crystallize the factual conditions set out in the declaration. To repeat, agreed or indisputable circumstances were: the wires were defendant's, were uninsulated, were dark in color, were dangerous, as evidenced by the death they dealt Lewis. They were strung through a grove of fruit trees, which from their very nature give notice that they will be visited by men who will gather *181 the ripened fruit, and when they become tall, by men with ladders.
Everybody knows that fruit trees grow and that poles carrying wires do not. For eight years the trees heightened until the menacing wires were but inches from the branches. The grove owner said they were "close toward the top," were "pretty close to the tips of the limb," were "a little bit off center from the center of the tree." According to a witness who measured the height of the wires from the ground "a branch or two of the * * * tree [hung] between the wires," the tree "was about two or three feet higher than the wires but the wires coming to the side of the tree * * *," and "the closest branches to amount to anything were within about a foot of it, [the wire] where * * * the branches would hang over." The foreman said "the limbs would be just touching the wires," or, at least, that was the case after the ladder and the man's body were removed.
Yet for eight years nothing had been done to change the location of the wires or raise them so their potential danger to workmen would be lessened or eliminated. These circumstances substantiated the averments of the declaration, so far as we know unassailed, and would preclude a court from pronouncing that as a matter of law no negligence had been established, no occasion remained for the jury to decide the matter.
In a recent case involving injury to a man who chose to fly a kite with a metal kite string, we reviewed the law with reference to the responsibility of persons distributing electricity; and we said that such manufacturers were not required to insulate wires wherever they were strung, or to maintain warning signs all over the place. Richmond v. Florida Power & Light Co., Fla., 58 So.2d 687. But of course, the propriety of the use of exposed wires must depend on their location. We can think of no clearer illustration of the need of insulation than of wires running through or within reach of bearing trees in a citrus grove.
Having settled the matter of the plaintiff's negligence we turn again to the record to see what indicated that death resulted from Lewis's own, or contributory, negligence. Here, two features weighed heavily with the trial judge and are now urged by the appellee: the ladder and the warning.
This aspect of the case should be introduced with the reminder that no one saw the mishap. The foreman set Lewis to work, and when he returned the man was dead.
The length of the ladder is not too important. The facts that the ladder was twenty-four feet long and the wires were fifteen feet above the ground do not lead to an inescapable conclusion that the ladder was placed on or over the wires. In the first place the height of the ladder would depend on the angle it formed with the surface; and in the second place, it could have been set against a limb or branch that gave way casting Lewis against the wires. The significance of the measurements and their relation to each other should be a question for the jury, and the deduction that the victim put his ladder over the wire in reckless disregard of his own safety amounts to adoption of the defendant's theory, despite the rule that upon a motion for directed verdict deductions must favor the plaintiff.
Actually the witnesses were not in accord about the positions of wires and ladder even when the body was suspended in the tree. The foreman said the ladder was atop the wires; the grower could not recall that this was true.
Too much is claimed for the value of the warning. By no fanciful construction could Lewis be said to have been told that the wires were live and that he ignored the information, propped the ladder against them, nonetheless, and paid with his life for his folly.
The so-called warning was given by the man who was supervising the picking and who had no connection whatever with the defendant corporation. Moreover, he didn't know any more about the character of the wires than Lewis. True, he testified that he told Lewis "to be careful of them * * *," but he added in the same breath *182 "I did not know what they carried." So the foreman pointed out something that was obvious to both, and offered caution when neither knew whether there was occasion for it.
When the plaintiff is indulged the inferences, intendments, and deductions to be taken from the testimony, we think it is plain that the jury should have decided whether Lewis was so negligent that his acts were the proximate cause of his death even though live, uninsulated, electrical wires of deadly capacity were maintained through a fruiting tangerine tree, or so near to it as to be a menace to any laborer who came to gather the fruit.
We cannot hold that defendant was not liable as a matter of law; we cannot strain the statute to warrant a decision that Lewis's conduct was such that it could only be concluded that his death resulted from his own negligence.
The judgment is reversed with direction to re-try the case.
Reversed.
SEBRING, C.J., MATHEWS, J., and HOCKER, Associate Justice, concur.