91 So.2d 806 (1957)
Mildred Louise CADORE, widow of Thorndyke A. Cadore, ceceased, now Mildred Louise Stahovec, Appellant,
v.
Sadie KARP, as Administratrix of the estate of Sam Karp, deceased, and Lloyd M. Stauffer, Appellees.
Supreme Court of Florida. Special Division B.
January 4, 1957.
*807 Ross Williams and Dixie H. Chastain, Miami, for appellant.
Dixon DeJarnette Bradford & Williams and Blackwell, Walker & Gray, Miami, for appellees.
ROBERTS, Justice.
The trial judge directed a verdict for the defendant at the close of plaintiff's case in an action for wrongful death, and plaintiff has appealed.
Since the death of plaintiff's decedent was the result of injuries received while a guest in an automobile being operated by defendant's decedent, the plaintiff was required to prove gross negligence in order to recover. Sec. 320.59, Fla. Stat. 1955, F.S.A.; Brailsford v. Campbell, Fla. 1956, 89 So.2d 241. The principal issue here is whether plaintiff's evidence was sufficient to take the case to the jury under the rule of Moore v. Dietrich, 133 Fla. 809, 183 So. 2, that "[a] verdict for the defendant should never be directed by the court unless it is clear that there is no evidence whatever adduced that would in law support a verdict for the plaintiff. If the evidence is conflicting, or will admit of different reasonable inferences, and if there is evidence tending to prove the issue, it should be submitted to the jury as a question of fact to be determined by them, and not taken from the jury and passed upon by the court as a question of law."
There was no real conflict in the evidence, although different reasonable inferences could perhaps be drawn therefrom. The defendant's decedent, Mr. Karp, was driving an Oldsmobile "98", two years old, en route to Key West from Miami, at about 5 p.m. on a clear day. He was accompanied by the plaintiff's decedent, Mr. Cadore, who was sitting in the front seat, and two other persons who were seated in the rear seat. One of the persons in the rear was the owner of the car, one Stauffer, who was also named as a party defendant in the instant suit. Both Cadore and Karp were instantly killed in the accident. Mr. Stauffer was asleep at the time it occurred and could shed little light on the circumstances surrounding it. The other passenger did not testify for reasons not shown by the record. The accident occurred on the Torch Key Viaduct bridge when the Karp car, travelling in a southerly direction, collided with a Ford being driven by one Berg in a northerly direction. The bridge is 22 feet wide, 779 feet long, and has a slightly higher elevation at the center than at each end. The point of impact of the collision was 66 feet from the south end of the bridge; and, according to the skid marks, the Karp car had skidded 130 feet before it collided with the left front of the Berg car. It then caromed off and hit the guard rail on its right (the west guard rail) head-on, and ended up diagonally across the bridge.
Mr. Berg testified that he first saw the Karp car when it was entering the bridge on the north, about 300 yards away. He thought it was travelling about 70 or 75 m.p.h. Berg said he was travelling about 35 m.p.h.; that he heard the noise made by the brakes being applied on the Karp car and felt that it was "out of control", that he pulled to the right of the highway and applied his brakes and had come almost to a dead stop when the Karp car hit him. *808 The Berg car made two distinct skid marks: one 39 feet and one 31 feet in length. The Berg car was a total wreck, as was the Karp car. Berg and his wife and a passenger were seriously injured. As noted, Cadore and Karp were killed and Mr. Stauffer, the owner of the Karp car, was also seriously injured. There was evidence that the traffic was heavy on the day in question, and that, at the particular time of the accident, there were at least two other cars on the bridge proceeding in a southerly direction and the Berg car travelling in a northerly direction.
The only other evidence having any bearing on the question of the speed of the Karp car was that of a Mr. Ennis, who was also travelling from Miami to Key West to attend the meeting which was the destination of the Karp party. According to Ennis' testimony, both cars stopped for a rest period at a tavern about 25 miles before reaching the bridge where the accident occurred, and the Karp car had pulled out behind him when they left the tavern. At about the time of the accident, he was driving at least 100 yards behind an Austin and was either at the end of the bridge on the south or had just left it when the Austin suddenly started slowing down. He applied his brakes gradually and did not skid. He then heard the screeching of brakes, looked in his rear-view mirror, and saw the Karp car collide with the Berg car. He said the Karp car "just looked like it was going to try to stand on its nose and sort of sashay a little bit to the left and to the right and as it went to the right it went across the bridge in the path of the Ford coming towards it." He declined to estimate the distance between his and the Karp car at the time of the accident, but said that he was travelling "in the general neighborhood" of 50 m.p.h. at the time. He said that "it must have been five or ten minutes" before the time of the accident that he had last looked in the mirror and observed the Karp car.
From the testimony of Berg and the evidence of the skid marks and other physical facts, the jury had the right to infer that Karp was driving at a high rate of speed on the bridge. There is no evidence as to the condition of the brakes, and we do not think the jury was required to infer that they were defective, as the defendant-appellee would have us do. From Ennis' testimony, quoted above, the jury could have inferred that Karp suddenly jammed on the brakes, rather than applying them gradually. Ennis' testimony that he himself was going about 50 m.p.h. at the time of the accident and that Karp was following him throws little light, if any, on the question of the speed of the Karp car, in view of his testimony that he hadn't observed the Karp car for five or ten minutes prior to the time of the accident. A highway patrol officer testified that 45 m.p.h. was a reasonable rate of speed on the bridge.
This court is committed to the rule that excessive speed alone, without other factual evidence of negligence, is insufficient to constitute gross negligence. Faircloth v. Hill, Fla. 1956, 85 So.2d 870, 873 and cases cited. In the Faircloth case, we held that a complaint based on failure to avoid running into a parked truck and trailer, at night, while driving at an excessive speed, stated a cause of action for gross negligence, saying: "So far as the complaint reveals, this tragic collision could have been avoided by the exercise of `slight care' on the part of the driver of the automobile and it appearing from the allegations that he failed to exercise the slightest degree of care commensurate with the circumstances, the complaint was at least sufficient to charge gross negligence within the limits of our prior decisions."
We think that, in the circumstances here, the jury could have found that Mr. Karp failed to exercise that degree of "slight care" which is the equivalent of "gross negligence". Faircloth v. Hill, supra. So it was error to withdraw the case from the jury and direct a verdict for the *809 defendant, under the rule of Moore v. Dietrich, supra, 183 So. 2, cited above.
No error has been found in the other assignments of error here argued by plaintiff; but, for the reason stated, the judgment appealed from should be and it is hereby reversed and the cause remanded for further proceedings.
Reversed and remanded.
DREW, C.J., O'CONNELL, J., and OGILVIE, Associate Justice, concur.