HORTON, Judge.
The appellant was the plaintiff and the appellee was the defendant in the court below. On the morning of March 9, 19SS, the appellant, who was employed as a mate on a charter fishing boat, was proceeding with a party to the Atlantic Ocean to fish. It was necessary for the boat to navigate Tavernier Creek, a public waterway in Monroe County, in order to reach the ocean. In so doing, the boat was required to pass under a bridge which carried vehicular traffic on U. S. Highway No. 1. After the boat had passed under the bridge, the appellant, while raising one of the aluminum outriggers, caused it to come in contact with uninsulated high tension wires spanning Tavernier Creek. The wires were erected and maintained by the appellee. As a result of the outrigger’s contact with the high voltage wires, the appellant received serious burns about his face, neck and body, necessitating the amputation of his left arm and rendering his right arm useless.
*598 Suit for personal injuries was filed by the appellant against appellee and other defendants. All of the defendants except appellee obtained favorable judgments before the cause was submitted to a jury. The cause was submitted to the jury to determine if the appellee-electric company had breached its duty to the appellant by failing to exercise that degree of vigilance and foresight reasonably consistent with the practical operation of its electrical system. The court charged the jury on the law of negligence as it related to the duty owed by the appellee to the appellant, the law of contributory negligence, and the law of comparative negligence as it applies in causes cognizable within the maritime jurisdiction. The jury returned a verdict assessing the appellant’s total damages at $150,000, but found the appellant to be 60%. negligent. The appellant moved for entry of a judgment in the amount of $60,000, representing the difference between the total damages and the amount found to be attributable to appellee’s negligence. The appellee moved for a new trial and renewed its motion for directed verdict made at the conclusion of all the evidence. The trial judge denied the appellant’s motion for judgment but granted the appellee’s motion for directed verdict and made the following findings :
(1) That the cause was governed by the laws of Florida rather than the maritime law under which the theory of comparative negligence would apply; and
(2) That the appellee was not guilty of any negligence. The motion for new trial' was denied.
The appellant argues three points on this appeal. First,'that the maritime doctrine of comparative negligence should apply; second, whether the trial judge erred in granting the directed verdict, finding as a matter of law that there was no negligence on the part of the appellee; and, third, whether the trial judge erred in charging the jury that the.power lines erected over the waterway in question were constructed g.nd erected under a valid existing government permit and that their presence was lawful.
We will consider the appellant’s second question first. This question is premised on the alleged error of the trial judge in ruling as a matter of law that there was no negligence on the part of the appellee. As the record will disclose, the trial judge instructed the jury on the law of negligence as it applied to the appellant’s right of recovery against the appellee. Likewise, he charged the jury on the law of contributory negligence and coupled that charge with additional instructions relative to the application of the .comparative negligence doctrine and the assessment of damages thereunder. If the trial judge was correct in his conclusion that there was no evidence of negligence on the part of the appellee, there would be no occasion for the application of the doctrine of comparative negligence or contributory negligence. The jury found that the appellant was 60% negligent.
We have carefully considered the record in this cause and particularly the testimony relating to the circumstances that led up to and existed at the time of the injury and we are impelled to the conclusion that the appellant’s injury was not caused through the negligent acts'or omissions on the part of the appellee. The captain of the boat on which the appellant was employed at the time of his injury, testified that there was no reason for the appellant to have raised the outrigger at the place that he did, and that it had been their custom not to raise' the outriggers until they were a considerable distance away ■ from the bridge. As the captain explained,it was actually a calculated risk to raise' the outrigger at the point where it was.raised by the appellant for the reason thati if the motors of the boat had failed, the' current, which was then moving against; them, would have caused the boat to re-, turn under the bridge and thereby damage; the outrigger. Comparing the circum-i stances of the injury with the duty imposed; upon the appellee, we cannot conceive how‘ the'appellee could have reasonably foreseen ¶ *599 the actions of the appellant. To hold the appellee to have breached its duty and obligations to the public as well as the appellant under these circumstances would, we think, place the appellee in the class of an insuror of the safety of all persons who came in close proximity with its wires.
The appellant was a man of experience and familiar with the surrounding territory and had, on several occasions, traversed the area in which the injury occurred. There is no contention that he was not aware of the power lines. Under the circumstances, we can only conclude that the appellant’s actions were the sole cause of his injury and that no evidence of negligence on the part of the appellee appears. The Supreme Court of Florida, in Richmond v. Florida Power & Light Co., Fla.1952, 58 So.2d 687, at page 688, in commenting on the danger of electricity and the necessity for its distribution, said:
“The inherent danger of electrically energized wires is well known to all except those of tenderest age, but as we have found in the quoted opinion, the need for successful distribution of so necessary a commodity cannot be defeated by requiring that every conceivable protection be afforded wherever wires carrying it may go, so that anyone who chances to come near may be saved from injury in anything he decides to do, however unpredictable.”
The appellant has cited us the cases of Hardware Mutual Casualty Co. v. Tampa Electric Co., Fla.1952, 60 So.2d 179, at page 181, 40 A.L.R.2d 1293; and Alabama Power Co. v. Irwin, 260 Ala. 673, 72 So.2d 300, at page 302, as the law that should be applicable to the facts in the instant case. In the Tampa Electric Co. case, the question of negligence directly involved was the failure of the electric company to insulate its wires when it was shown that the wires ran through citrus trees. The decedent, Lewis, was electrocuted when he came in contact with the uninsulated wires while he was engaged in attempting to pick fruit from a citrus tree. The uninsulated wires were approximately 15 feet above the ground and the branches of the trees extended up above the height of the wire. The court, in reversing the judgment and verdict for the defendant-electric company, said :
“* * * But of course, the propriety of the use of exposed wires must depend on their location. We can think of no clearer illustration of the need of insulation than of wires running through or within reach of bearing trees in a citrus grove.” [60 So.2d 181.]
The Irwin case also involved a death as a result of electrocution. The deceased was electrocuted when a metal pipe approximately 30 feet long which he was assisting in removing from a water well pump came in contact with an uninsulated 110 volt service line maintained by the power company, to convey electricity to the well. The wire with which the deceased came in contact was approximately 25 feet from the ground, and a horizontal distance from a point on the ground directly underneath the wire to the well was between ten and twelve feet. It appeared that the local manager and another employee of the power company had visited the premises where the well was located on six occasions during the twelve months’ period preceding the accident and in addition, the well was located within three feet of a public highway with its view unobstructed.
These cases appear easily distinguishable from the case at bar. In the Tampa Electric Co. case, it is readily apparent that the power company could have reasonably foreseen that persons might come in contact with the uninsulated wires where these wires ran through bearing citrus trees. Likewise in the Irwin case, certainly the power company could have anticipated that persons might come in contact with the wires in repairing the water well pump.
We are in accord with the principles of law enunciated in these two cases but fail *600 to see how they are applicable to the facts in the instant case.
Having concluded that the learned trial judge was correct in granting the motion for directed verdict, it becomes unnecessary for us to discuss the appellant’s other questions.
Accordingly, the judgment appealed from is affirmed.
CARROLL, CHAS., C. J., and PEARSON, J., concur.