190 So.2d 432 (1966)
Louis GUERRIERO and Katherine P. Guerriero, Husband and Wife, Appellants,
v.
Richard C. ADAMS and Winna Sue Adams, Husband and Wife, Appellees.
No. 65-582.
District Court of Appeal of Florida. Third District.
September 20, 1966.
Rehearing Denied October 19, 1966.
Carroll, Vega, Brown & Nichols, Naples, for appellants.
Dean, Adams, George & Wood, Miami, for appellees.
Before PEARSON, CARROLL and BARKDULL, JJ.
CARROLL, Judge.
This is an automobile accident case. The plaintiffs sued defendants for damages for personal injuries received when an automobile driven by the plaintiff Louis Guerriero, in which his wife the plaintiff Katherine P. Guerriero was a passenger, was involved in a head-on collision with an automobile owned by the defendant Richard C. Adams, driven by his wife the defendant Winna Sue Adams, on the Tamiami Trail (U.S. Highway 41) in Collier County. Plaintiffs alleged their injuries were proximately caused by negligence of the defendant driver. Defendants denied negligence and pleaded contributory negligence. On *433 trial before a jury, at the conclusion of the plaintiffs' case, motion of defendants for directed verdict was granted. The appeal by the plaintiffs from the judgment entered thereon challenges the propriety of the ruling directing a verdict.
On this appeal, as in the trial court on consideration of the defendants' motion for directed verdict, the determinative questions are, as to the claim of the plaintiff Louis Guerriero, whether there was evidence upon which the jury could find that the defendant driver was negligent, and if so, whether the plaintiff driver was guilty of contributory negligence as a matter of law; and, as to the claim of the plaintiff Katherine Guerriero, who as a passenger would be unaffected by contributory negligence if any of her husband, whether it was made to appear as a matter of law that the defendant driver was free of negligence proximately causing her injuries or of any negligence which, combined with negligence of the plaintiff driver, was a contributing proximate cause thereof.
Controlling the trial judge's consideration of those questions on the defendants' motion for directed verdict was the rule pronounced by statute and repeatedly in decisions that such a verdict should not be granted unless "it is clear that there is no evidence whatever adduced that could in law support a verdict for plaintiff." Section 54.17, Fla. Stat., F.S.A. Chambers v. Loftin, Fla. 1953, 67 So.2d 220, 221; Mullis v. City of Miami, Fla. 1952, 60 So.2d 174; Cadore v. Karp, Fla. 1957, 91 So.2d 806; Paikin v. Beach Cabs, Inc., Fla.App. 1966, 187 So.2d 93, 94. Likewise, on reviewing the judgment for defendants based on a directed verdict this court is required to observe the settled rule, as stated by the Supreme Court in Rodi v. Florida Greyhound Lines, Fla. 1953, 62 So.2d 355, 356, that we should consider the testimony adduced in the cause in the light most favorable to the plaintiffs, disregarding conflicts in the evidence and indulging in plaintiffs' favor every reasonable intendment deducible from the evidence. Hardware Mutual Casualty Co. v. Tampa Electric Co., Fla. 1952, 60 So.2d 179, 40 A.L.R.2d 1293; Brightwell v. Beem, Fla. 1956, 90 So.2d 320, 322; Guhman v. Florida Power & Light Company, Fla.App. 1962, 139 So.2d 749, 750.
On so considering the evidence presented by and on behalf of the plaintiffs we hold it was such as to require submission of the case to the jury on the issues of negligence and contributory negligence and that the able trial judge committed error in directing a verdict in favor of the defendants and against the plaintiffs.
Viewed in the light favorable to the plaintiffs and omitting statement of conflicts or inconsistencies in the testimony where not essential, facts disclosed in the evidence included the following.
The plaintiffs were traveling west by automobile on the Tamiami Trail. The plaintiff Louis Guerriero was driving and the plaintiff Katherine P. Guerriero, his wife, was a passenger. Before reaching the city of Naples they turned off the two-lane highway, to the right into Golden Gates Welcome Station, maintained by Gulf American Land Corporation in furtherance of its land development operations. At the time plaintiffs returned to the highway the weather was overcast, with light rain. The plaintiff driver proceeded to within a few feet of the highway and stopped. He looked to the left and observed no traffic approaching in the westbound lane which he was about to enter. He also looked to the right but stated he gave no concern to traffic approaching from the west in the eastbound lane. He proceeded onto the highway, turning to the right into the near or westbound lane, saw a car pass him going east in the eastbound lane and almost immediately thereafter was struck head-on by the defendant's vehicle proceeding east in the lane in which the plaintiff driver was proceeding west. The accident was witnessed by the managing attendant at the Welcome Station. He was inside the Welcome Station building situated approximately 100 feet off *434 the highway, looking through a glassed front opening which permitted him a view of the plaintiff driver upon entering the highway and at the point of impact, and of the highway for approximately 100 feet west of the point of impact. That witness stated the plaintiff stopped before entering the highway, then pulled on to the highway and proceeded in the right-hand or westbound lane for a distance of approximately 50 feet to the point of impact; that he first saw the defendant's vehicle in the westbound lane when it was approximately 100 feet from the point of impact. He fixed the point of impact with reference to a certain white post at the edge of the highway. The measured distance made the point of impact 40 feet west of the edge of the driveway which entered the highway from the Welcome Station, and the witness said plaintiff entered the highway 10 feet east of the west edge of that driveway, thus making the plaintiff on the highway for 50 feet before impact.
The speed of the plaintiff driver on the highway was fixed by the eye witness as having reached 10 or 15 miles per hour at the point of impact. An expert witness testified that a driver so entering the highway and proceeding 50 feet from a standstill to an attained speed of 10 miles per hour would be driving on the highway approximately 6 seconds, and one driving 50 feet from a standstill to an attained speed of 15 miles per hour would be on the highway 4.5 seconds.
The defendant driver had been proceeding east behind another automobile at a speed, according to her, of approximately 55 miles per hour. One hundred and seventy-five feet west of the driveway entrance to the Golden Gates Welcome Station there was an intersecting highway. The defendant driver testified that she pulled into the left or westbound lane to pass the car ahead of her after she had passed that intersection. The eye witness who observed the defendant's automobile when she was in the west lane, from a point 100 feet west of the point of impact, estimated her speed at 65 to 70 miles per hour. If, as stated by the defendant driver she was attempting to pass an automobile which was proceeding ahead of her at the rate of 55 miles per hour, it is reasonable to assume she had accelerated to some greater speed. Taking her speed at 60 miles per hour, according to the testimony of the expert witness she was traveling 88 feet per second.
A material fact in determining the question of negligence of the defendant driver is whether, at the time she pulled into the left lane in an attempt to pass the vehicle ahead of her, the plaintiff driver was on the highway proceeding west.[1] According to the defendant driver's testimony she was not more than 175 feet from the driveway from which the plaintiff driver entered the highway when she moved into the left lane for passing. The mark she placed on a chart in evidence to indicate the point at which she pulled into the left lane made it appear she was more than halfway between the highway intersection to the west and the point of impact when she moved into the left lane. Giving the defendant driver the benefit of having entered the left lane immediately after passing the highway intersection, that would be approximately 135 feet from the point of impact, since the latter *435 point was 40 feet west of the driveway entrance to the Welcome Station. Proceeding at a rate of 88 feet per second it is evident from the defendant driver's own testimony that she entered the left lane for the purpose of passing not more than one and a half seconds before the collision occurred. Thus, at the time the defendant driver moved into the left lane, the plaintiff driver was on the highway proceeding west and had been there for 3 seconds or more. Stated differently, from the evidence the jury would be entitled to find that the defendant driver pulled into the left lane and attempted to pass a vehicle ahead of her at a time when traffic was approaching in the left-hand lane at a distance which would prevent her from completing the passing operation, and that she failed to return to the right-hand or eastbound lane when at least 100 feet from the traffic which was approaching her, in violation of a controlling statute. (See footnote No. 1.)
Whether the plaintiff driver was guilty of negligence as a matter of law by entering upon the highway when he did[2] would depend on the presence or absence of traffic approaching from the west in the westbound lane at the time he entered. His testimony that he paid no particular attention to traffic approaching from the west may be inferred to mean that he paid no attention to traffic which was approaching from the west in the proper or eastbound lane, as the physical evidence indicates no traffic was approaching in the westbound lane when he entered the highway. This is consistent with the defendant driver's testimony that she was following a car in the eastbound lane and pulled into the westbound lane to pass the car ahead of her when she had passed the intersection located 175 feet west of the entrance to the Welcome Station. From the distances and times involved, a jury could find that at the time the plaintiff driver entered the highway there was no traffic approaching from the west in the westbound lane. It would not be negligence to enter a two lane highway and proceed to the right in the near lane, even though there was traffic approaching from the other direction in the proper lane and not in the lane being entered.
Viewed in the light favorable to the plaintiffs, there was evidence from which a jury could find that when the plaintiff entered the highway no traffic was approaching from either direction in the lane he was entering, and there was evidence from which a jury could find that the plaintiff driver was on the highway proceeding west at the time the defendant driver, proceeding east, entered the westbound lane and attempted to pass another vehicle which was proceeding ahead of her in the east lane.
Accordingly, the judgment is reversed and the cause is remanded for new trial.
Reversed and remanded for new trial.
PEARSON, Judge (dissenting).
It is my view that all of the facts in evidence are consistent with the defendant-driver's testimony that at the time she began her passing operation plaintiffs' vehicle had not entered the highway.
As he drove out of the parking lot, plaintiff-driver stopped approximately five feet from the edge of the highway and looked both ways for traffic. He had an unobstructed view and was able to see a mile down the road toward Naples. He observed no traffic in the westbound lane. The plaintiff-driver testified that after he looked to see if there was any traffic in the eastbound lane, he turned into the highway, but that he did not pay any particular attention to oncoming traffic in the other lane. He started out slowly and turned into the highway going west towards Naples. He was onto the highway but close to the edge of *436 the driveway when a car in the eastbound lane passed on his left going towards Miami. An instant later he saw defendants' automobile five or ten feet in front of him. The impact between the two cars pushed plaintiffs' automobile back into the parking lot.
The trial judge did not err in holding that the sole proximate cause of the collision was the plaintiff's own negligence. There is no evidence in this case which is sufficient to overcome the prima facie case established by plaintiff-driver's violation of section 317.431, Fla. Stat., F.S.A. I would affirm upon authority of the rule in Allen v. Rucks, Fla.App. 1960, 121 So.2d 167 and Parker v. Hofheinz, Fla.App. 1966, 181 So.2d 367.
NOTES
[1] § 317.291(1), Fla. Stat., F.S.A.:

"No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless authorized by the provisions of this chapter and unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the operation of any vehicle approaching from the opposite direction of any vehicle overtaken. In every event the overtaking vehicle must return to an authorized lane of travel as soon as practicable and in the event the passing movement involves the use of a lane authorized for vehicles approaching from the opposite direction, before coming within one hundred feet of any approaching vehicle."
[2] § 317.431, Fla.Stat, F.S.A.:

"The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right of way to all vehicles approaching on said highway."