218 So.2d 213 (1969)
Harry WHITMAN, Individually, and As Husband of the Deceased, Rachel Whitman, and Harry Whitman, As the Administrator Cta of the Estate of Rachel Whitman, Deceased, Appellant,
v.
RED TOP SEDAN SERVICE, INC., and William DiLenge, Jointly and Severally, Appellees.
No. 68-262.
District Court of Appeal of Florida. Third District.
January 21, 1969.
Rehearing Denied February 20, 1969.
*214 Kastenbaum, Mamber, Gopman, Epstein & Miles, Miami Beach, for appellant.
Preddy, Haddad, Kutner & Hardy, and Walter E. Mackoul, Miami, for appellees.
Before CHARLES CARROLL, C.J., and PEARSON and BARKDULL, JJ.
CHARLES CARROLL, Chief Judge.
On September 1, 1965, the appellant Harry Whitman and his wife, the decedent Rachel Whitman, were paying passengers in a bus-like motor vehicle, commonly referred to as an airport-limousine, being driven by one William DiLenge, as the employee of Red Top Sedan Service, Inc., a common carrier, owner of the vehicle. The limousine was involved in a collision with an automobile at the intersection of Collins Avenue and 22nd Street on Miami Beach.
Harry Whitman and his wife Rachel Whitman filed an action against the driver *215 and the owner of the limousine for damages for personal injuries to them alleged to have been caused by negligence of the defendant driver. Subsequently, and prior to trial, Rachel Whitman died as a result of her injuries. The complaint was amended to present, in addition to the claim of Harry Whitman individually, claims by him as the husband of the decedent for wrongful death under §§ 768.01 and 768.02 Fla. Stat., F.S.A., and as administrator of the estate of his deceased wife, under the survival statute, § 45.11, now § 46.021 Fla. Stat., F.S.A. The defendants answered and denied negligence.
The case was tried before a jury. At the close of all the evidence the defendants moved for a directed verdict, and the court reserved ruling on the motion. A verdict was returned in favor of the plaintiff, which awarded $1,500 damages to Harry Whitman individually and as husband of the decedent, and awarded $5,000 damages to him as administrator. After verdict the defendants filed a motion under rule 1.480(b) RCP, 30 F.S.A., to enter judgment for defendants in accordance with their motion for directed verdict. That motion did not contain an alternative request for new trial, and the record does not disclose any separately filed motion for new trial. See rule 1.480(c) RCP. The trial court granted the motion and entered judgment for the defendants. The plaintiff then filed this appeal, individually and in his said capacities.
In the judgment the trial court said: "The court finds as a matter of law that the evidence submitted during the trial of this cause is legally insufficient to support a verdict for the plaintiff; that there was no evidence that the defendant DiLenge was guilty of any negligence which proximately caused or contributed to the occurrence of the accident giving rise to this cause and, accordingly, there is no material issue of fact to submit for the jury's consideration."
In the first point presented on this appeal the appellant challenges the correctness of the ruling of the trial court that no actionable negligence of the defendant common carrier, through its employed driver, was shown in the evidence.
A trial court's consideration of a defendant's motion for directed verdict is governed by a rule as stated by the Supreme Court in Mullis v. City of Miami, Fla. 1952, 60 So.2d 174, 176, viz: "The court should not direct a verdict for the defendant, unless it is clear that there is no evidence whatever adduced that could in law support a verdict for plaintiff." See also Chambers v. Loftin, Fla. 1953, 67 So.2d 220, 221; Cadore v. Karp, Fla. 1957, 91 So.2d 806; Paikin v. Beach Cabs, Inc., Fla.App. 1966, 187 So.2d 93, 94; Guerriero v. Adams, Fla.App. 1966, 190 So.2d 432, 433. That same rule applies when ruling has been reserved and the court has for consideration a defendant's motion after verdict for judgment based on the motion for directed verdict. This is so because under the present practice, provided for by rule 1.480 RCP, the ruling made is a deferred ruling on the motion for directed verdict. A substantially similar rule was held to govern the trial court in disposing of a motion for judgment notwithstanding the verdict under the former practice. See Deese v. White Belt Dairy Farms, Inc., Fla.App. 1964, 160 So.2d 543; Smith v. Peninsular Insurance Company, Fla.App. 1966, 181 So.2d 212; Love v. Adams, Fla. App. 1967, 194 So.2d 55.
On consideration of the evidence disclosed in the record, in the light of the rules set out above, we are impelled to conclude the trial judge was in error in holding that no evidence was adduced which could in law support a verdict for the plaintiff.
The duty owed by this common carrier was that which was stated in Red Top Cab & Baggage Co. v. Masilotti, 5 Cir.1951, 190 F.2d 668, 671, as follows:
"While the Florida law does not treat a common carrier as an absolute insurer of its passengers, such carrier is required *216 to exercise the highest degree of care, foresight, prudence and diligence reasonably demanded at any given time by the conditions or circumstances then affecting its passengers and the carrier during the contract of carriage. Failure to exercise the highest degree of care in such an instance is slight negligence, for which the carrier is held responsible."
The Florida Supreme Court has defined such duty in almost the exact language as that quoted above from the Masilotti case. See Swilley v. Economy Cab Co. of Jacksonville, Fla. 1950, 46 So.2d 173, 177; Florida Ry. Co. v. Dorsey, 59 Fla. 260, 52 So. 963, 966; Edwards v. Jacksonville Coach Company, Fla. 1956, 88 So.2d 543, 544.
Viewing the evidence as required in the light most favorable to the plaintiff, disregarding conflicts and indulging in plaintiff's favor every reasonable intendment deducible from the evidence,[1] the facts before the jury included the following. The collision occurred in the daytime. The weather was clear. The driver of the limousine was proceeding south at approximately 25 miles per hour, in the right hand lane of the two southbound lanes on Collins Avenue. The intersection at 22nd Street was controlled by a stop light, which was green in favor of the limousine. The defendant driver testified that his view of traffic approaching from his left on 22nd Street was not obscured, and that there was an open lot on which a miniature golf course was operated. When asked whether the latter obstructed his vision of traffic coming west on 22nd Street, the driver answered: "I don't think so." At another place he testified: "There was nothing obstructing my vision." When asked: "Then you had a clear vision of any vehicles that would have been coming west on 22nd Street?" he answered: "I would have seen it; yes." He testified that he looked at the road ahead of him, and that he did not see the other vehicle prior to the collision.
From the foregoing the jury could conclude that the driver was negligent to some degree, through inattention by failing to maintain a proper lookout for approaching cross street traffic, and in not seeing the vehicle which was failing to stop and which was proceeding against the red light into the intersection, and that such negligence of the defendant driver proximately contributed to cause the collision. The fact that negligence of the carrier's driver may have been of small degree compared to the negligence of the driver of the other vehicle was not a basis for the carrier to escape liability, particularly in view of the duty imposed on the carrier to exercise the highest degree of care consistent with practical operation. The assumption which a driver on a through street may make, that a vehicle approaching from a side street will stop, vanishes when it can be seen the latter is not going to stop and is proceeding into the intersection.[2] On the basis of the evidence, the jury properly could and did determine that the conduct of the driver constituted negligence in violation of the degree of care owed by the carrier to its passengers.
For the reasons stated, the judgment appealed from is reversed, and the cause is remanded to the circuit court with direction to reinstate the verdict and enter judgment thereon.
Reversed and remanded with direction.
NOTES
[1] Rodi v. Florida Greyhound Lines, Fla. 1952, 62 So.2d 355, 356; Hardware Mut. Cas. Co. v. Tampa Electric Co., Fla. 1952, 60 So.2d 179, 40 A.L.R.2d 1293; Brightwell v. Beem, Fla. 1956, 90 So.2d 320, 322; Guhman v. Florida Power & Light Company, Fla.App. 1962, 139 So.2d 749, 750; Guerriero v. Adams, Fla. App. 1966, 190 So.2d 432, 433.
[2] Kerr v. Caraway, Fla. 1955, 78 So.2d 571, 572; Mason v. Remick, Fla.App. 1950, 107 So.2d 38, 39; 3 Fla.Jur., Automobiles § 93.