HOBSON, Chief Judge.
Plaintiff-appellant, Barbara Tillery, appeals a final judgment entered upon a directed verdict for defendant-appellee, Standard Sand and Silica Company, in an action brought by plaintiff-appellant for the death of her husband.
On September 30, 1965, James Albert Tillery, the husband of appellant, was killed either as a result of an electric shock received by him while he was engaged in welding certain equipment and machinery or as a result of a fall to the ground.
The complaint alleged that the death of Tillery was caused by the negligence and carelessness of the defendant in that it furnished Tillery with a defective .welding machine; that defendant did not provide a safe place in which to work; and that defendant did not provide help or assistance to Tillery as it had promised when he was engaged to do the welding in question.
The deceased along with his father and brother were in partnership together. They owned their own equipment and did welding for various people. On the date of the accident they were engaged in certain work on defendant’s new plant as independent contractors. That morning the Tillerys had started work at the new plant when a Mr. Carnes, the vice president of defendant corporation, came oyer from the old plant and requested that one of the Tillerys go to the old plant, which was across the highway, and do some welding to install a ben-dicator in a bagging machine. It was agreed that James Tillery, the deceased, *844 would go. Mr. Carnes stated that there was a welding machine at the old plant and that there would be no need to take one for the job and that only one man was necessary as he had people who could assist.
The machine bendicator at the old plant which was in need of welding was high above the floor. There was no scaffolding around the bagging machine. In order to do the welding, which was at the top of the bagging machine, Tillery had to stand on its metal beams. Present during most of the time that Tillery was working was Robert Yont, the assistant superintendent of the defendant, and Dan A. Nease, a representative of St. Regis Paper Company that had sold the bagging machine to the defendant.
Tillery had been welding from about 10:00 A.M. to about 4:00 P.M. with a short break for lunch and just as he had completed the last welding on the machine he was heard to scream, “Oh, my God, turn it off! Turn it off!” Nease ran and closed down the main switch, whereupon the deceased fell to the floor. Both Nease and Yont attempted mouth-to-mouth resuscitation on Tillery who responded but was dead on arrival at the clinic to which he was taken by ambulance following the accident.
Mr. Yont testified that other persons had reported receiving shocks from this same welding machine. According to Mr. Yont the welding machine in question had been sent to Orlando for inspection and apparently for painting or refinishing about a year prior to the accident. Yont did not know the exact nature of the work done by the Orlando concern and did not know what kind of inspection or repair, if any, was given to the machine.
Mr. Nease testified that he was present during the time that Tillery was welding and stated that he inspected the bagging machine three times a year and that no scaffold was provided on which Tillery could work.
Several employees and former employees of the defendant, who had used defendant’s welding machine, testified to shocks they had received from it. Emmett J. Miles, an employee, had used this same welding machine some two-and-a-half months prior to the accident in question and received a shock severe enough to knock him loose from the place where he was welding. This incident was reported by Mr. Miles to Mr. Yont.
The medical testimony was to the effect that Tillery had died from either electrical shock or from the fall to the ground following Mr. Nease’s throwing of the main switch.
Expert testimony as to the welding machine showed:
1. There was no switch on it to cut it off;
2. It was in need of general repair;
3. It was a 50% duty cycle and should only be run about half of the time;
4. An outside electrical cable was worn with its covering rubbed off; and, that
5. Tillery could not have received enough voltage to kill unless the welding machine was internally faulty.
At the close of all the evidence, the court directed a verdict for the defendant. After judgment was entered thereon, this appeal ensued.
The first consideration on this appeal is whether any duty was owing to deceased which would give rise to liability on defendant’s part if that duty were breached resulting in injury to the deceased which caused his death.
At the outset, it should be emphasized as it was in Bryan v. Loftin, Fla.1951, 51 So.2d 724:
“This is an appeal from a judgment entered upon a verdict directed in de *845 fendants’ favor in a suit wherein plaintiff sought to recover for her injuries sustained in a railroad crossing collision. This court has many times held that ‘The power granted to a trial court to direct a verdict during the trial of a cause where sufficient evidence has not been adduced to make out a case should be cautiously exercised so as not to infringe upon the organic right of trial by jury. If the evidence is conflicting or will permit of different reasonable inferences, or if there is evidence tending to prove the issues, it should be submitted to a jury as a question of fact to be determined by it, and not taken from the jury and passed upon by the Court as a question of law.’ See Saunders v. Lischkoff, 137 Fla. 826, 188 So. 815, and cases therein cited; Moore v. Dietrich, 133 Fla. 809, 183 So. 2; Johnson v. Louisville & N. R. Co., 59 Fla. 305, 52 So. 195, 196. In the case last cited, it was stated that ‘The court should not direct a verdict for the defendant, unless it is clear that there is no evidence whatever adduced that could in law support a verdict for plaintiff.’ ”
The facts established that the defendant, Standard Sand and Silica Company, engaged the decedent as an independent contractor to do some work on defendant’s premises and that the defendant undertook to furnish the deceased with a welding machine and the implements or instrumentalities with which to do the required work.
As to the duty owed the decedent by the defendant, it was held in Green v. Sansom, 41 Fla. 94, 25 So. 332:
“Where the employer undertakes to furnish his own employé, or those of an independent contractor, some of the implements or instrumentalities for executing the required work, he thereby assumes a duty to exercise ordinary and reasonable care, measured by the - surrounding circumstances, to provide such instrumentalities as will be reasonably safe and suitable.”
It was also held in Florida Power & Light Co. v. Robinson, 68 So.2d 406 (Fla.1953), at page 411:
“ ‘A person who is having work done on his premises by an independent contractor, and has actual or constructive knowledge of latent or potential dangers on the premises, owes a duty to give warning of, or use ordinary care to furnish protection against, such dangers to employees of the contractor and subcontractor who are without actual or constructive notice of the dangers.’ 57 C.J. S. Master & Servant § 606; Brown v. Board of Trustees of Leland Stanford Junior University, 41 Cal.App. 100, 182 P. 316; Gallo v. Leahy, 297 Mass. 265, 8 N.E.2d 782; Debenjak v. Parkway Oil Co., 159 Pa.Super. 603, 49 A.2d 521; Calvert v. Springfield Electric Light Co., 231 Ill. 290, 83 N.E. 184, 14 L.R.A.,N.S., 782; Samuelson v. Cleveland Iron Mining Co., 49 Mich. 164, 13 N.W. 499.”
In accord with the established rule set out .in Florida Power & Light Co. v. Robinson, supra, we here pose and answer three questions: Did Standard Sand and Silica Company have actual or constructive knowledge that their welding machine was defective so as to cause electrical shock ?[1] Did the defect, if any, constitute a latent danger? Did plaintiff’s deceased have actual or constructive notice of the danger?
The jury in the Robinson case, supra, answered the somewhat similar questions posed there by its verdict for the plaintiff which was affirmed. In the instant case, it is only our concern to determine if sufficient evidence exists from which a jury could answer the questions *846 we have posed so as to permit recovery by the plaintiff. We conclude that there is.
At- the trial, several employees testified as to receiving shocks from the welding machine. Mr. Yont, a superintendent of defendant, testified that persons had reported receiving shocks from the same welding machine the deceased used. One employee named Emmett J. Miles testified that he, in using the welding machine some two-and-a-half months prior to the accident in question, received a shock severe enough to knock him loose from the place where he was welding. Mr. Miles reported this incident to Mr. Yont. Mr. Yont was a supervisor of defendant and was present during most of the time that deceased was welding; therefore, a jury could conclude that defendant had notice.
As to the defect, if any, constituting a latent danger, defendant’s own expert testified the welding machine seemed in good operating condition to him. Plaintiff’s expert testified that the deceased could not have received enough voltage to kill unless the welding machine was internally faulty. From this a jury could conclude that the welding machine looked safe from the outside but that the welding machine was faulty internally thus posing a latent danger.
From the record before us, it does not appear that Tillery, the deceased, had notice of any danger, actual or constructive and a jury could so find.
In view of the duties outlined above, it is not here necessary to outline more. Suffice it to say that there were duties owing to plaintiff’s deceased on which liability could be predicated and there was sufficient evidence adduced by which a jury could reach a verdict for plaintiff and be in accord with the established rule as set out in Florida Power & Light Co. v. Robinson, supra.
It must now be determined whether a jury in the instant case could properly infer that Tillery died from electrical shock or as a result of the fall caused by the electrical shock and based on that inference conclude that the shock came from a defective welding machine, without violating the inference on an inference rule.
Before making any determination in this regard, we will delve into this area of the law as it has been clearly delineated by the Florida Supreme Court-. The late Mr. Justice Hobson, speaking for the Court in Voelker v. Combined Ins. Co. of America, 73 So.2d 403 (Fla.1954), stated at page 405:
“* * * [W]hen circumstantial evidence is relied upon in a civil case as a method of proof any reasonable inference deducible therefrom which would authorize recovery must outweight each and every contrary reasonable inference if the plaintiff is to prevail. We quote from our opinion in the case of King v. Weis-Patterson Lumber Co., 124 Fla. 272, 168 So. 858, 859: ‘Where circumstantial evidence is relied on in a civil case to prove an essential fact or circumstance essential to recovery, the rule is that the particular inference of the existence of the fact relied on as arising from the circumstances established by the evidence adduced, shall outweigh all contrary inferences to such extent as to amount to a preponderance of all of the reasonable inferences that might be drawn from the same circumstances.’ ”
At page 406:
“ * * * We also state anew that in this jurisdiction the rule in civil cases when circumstantial evidence alone is relied upon differs from and is less stringent than the rule which governs in criminal cases.”
“The fact that circumstantial evidence is relied upon in a civil action at law does not alter either the rule that it is solely within the province of the jury to evaluate or weigh the evidence or that the burden of establishing a right of recovery by a preponderance of the evidence is upon the plaintiff. Consequently, in such a case if the circumstances established by *847 the evidence be susceptible of a reasonable inference or inferences which would authorize recovery and are also capable of an equally reasonable inference, or inferences, contra, a jury question is presented. We cannot overemphasize our use of the adjective ‘reasonable’ as modifying the noun ‘inference’. Of course if none of the inferences on the one hand accords with logic and reason or human experience, while on the other hand an inference which does square with logic and reason or human experience is deducible from the evidence, the question is not for the jury but is one of law for the court.”
At page 407:
“ * * * [T]hat is to say when no contrary reasonable inference may be indulged, such inference is elevated for the purpose of further inference to the dignity of an established fact. We are also convinced that this principle creates an exception to which the often-stated rule against laying inference upon inference must yield, or perhaps it would be more accurate to say that the rule itself should never be applied without reference to its purpose, which is nothing more nor less than to protect litigants from verdicts or judgments based upon speculation. We do not believe that the ‘inference upon inference’ rule, whose common acceptance has been justly and appropriately criticized by Professor Wigmore (1 Wig-more on Evidence, 3d Ed., Sec. 41, pp. 434-441), should be construed to mean that under no conceivable circumstances may one inference be deduced from another. We think, however, that such method of establishing an ultimate fact should not ordinarily be indulged unless the first inference meets a test which may be analogized to the criminal rule concerning circumstantial evidence, i. e., in the ordinary case, only if the prior or basic inference is established to the exclusion of any other reasonable theory should another be drawn from it.”
Mr. Justice Thornal, speaking for the Court in Nielsen v. City of Sarasota, 117 So.2d 731 (Fla.1960), stated at page 733:
“The sum of all of these opinions is that in a civil case, a fact may be established by circumstantial evidence as effectively and as conclusively as it may be proved by direct positive evidence. The limitation on the rule simply is that if a party to a civil action depends upon the inferences to be drawn from circumstantial evidence as proof of one fact, it cannot construct a further inference upon the initial inference in order to establish a further fact unless it can be found that the original, basic inference was established to the exclusion of all other reasonable inferences.”
* * * * * *
“ * * * [T]he rule in civil cases is that a fact may be proved by circumstantial evidence if the inference of the fact preponderates over other inferences.”
At page 734:
“ * * * [A]n ultimate fact, such as proximate cause, may in a proper case be established by circumstantial evidence.”
The trial judge gave as his grounds for directing a verdict: 1) that the plaintiff had not established the cause of decedent’s death; and, 2) that even if the cause of death could be inferred there was not sufficient evidence from which the jury could find that the defendant was guilty of any negligence. We have already held that there is sufficient evidence and inferences therefrom from which the jury, if they believed, could find the defendant guilty of negligence.
The defendant contends that the cause of decedent’s death must be based on an inference and that, in turn, if it is inferred the decedent died as a result of an electrical shock that an additional inference must be based thereon that the electrical shock came from a defective welding machine. In applying the rule of law laid down in *848 the Voelker and Nielsen cases, supra, we hold that under the evidence in this case a jury could conclude that the original basic inference, to-wit, that the decedent died from an electrical shock or as a result of the fall caused by an electrical shock, was established to the exclusion of all other reasonable inferences. Therefore, such inference can be used upon which to base a further inference, to-wit, that the electrical shock came from a defective welding machine furnished by the defendant.
For the foregoing reasons we conclude that there were issues of fact which should have been submitted to a jury under appropriate instructions.
Reversed and remanded for a new trial.
PIERCE and McNUL'TY, JJ., concur.

. We hold ante in resolving the second point in this opinion that the jury could conclude from the evidence that the only reasonable inference as to the cause of decedent’s death was the electrical shock or the fall as a result of the electrical shock.