Suit by Ray N. Dehon against Harry H. Heidt to recover damages for negligent death of plaintiff's son in collision between servi-cycle and defendant's automobile. From a judgment entered upon a directed verdict in favor of defendant, plaintiff appeals.
Judgment reversed and new trial granted.
Appellant as plaintiff sued appellee to recover damages for the negligent death of his minor son. On the first trial the jury failed to reach a verdict, a mistrial was declared and the case was set for trial a second time. When the second trial was concluded the jury deliberated over two hours and reported to the Court that they were unable to agree on a verdict. The Court gave them further instructions and ordered them to again consider their verdict. This procedure was warranted by Section 54.22, Florida Statutes 1941, F.S.A. After more than two hours deliberation the jury again returned to the courtroom and reported to the Court that they could not reach a verdict.
The Court then announced that he would take the responsibility for deciding the case himself and instructed the foreman of the jury to sign a verdict for the defendant on which final judgment was entered. The reason given by the Court for so instructing the jury was that two juries having failed to reach a verdict based on negligence, the plaintiff had failed to make out his case. A new trial was denied and this appeal was prosecuted.
The question for determination is whether or not the second jury having failed to agree on a verdict for the plaintiff, the trial court committed error in taking the case in hand and directing a verdict for the defendant.
We think that an examination of the record requires an affirmative answer to this question. Summarized, the evidence shows that young Dehon was killed in a collision between the servi-cycle on which he was riding and appellee's automobile which was being driven by his son. The collision took place in the late afternoon as daylight was overtaking the shadows of evening, in the Town of Boca Raton, approximately fifty feet south of the intersection of State Highway AIA and Palmetto Park Road which runs east and west from Boca Raton to the Beach. Young Dehon and a friend, Billy Gaskins, met about 600 feet south of the intersection. Gaskins was riding a motor-bike and Dehon was riding a servi-cycle. They exchanged a few words and proceeded north on State Highway AIA which was twenty-two feet wide and straight for some distance either way from the point where the collision occurred. Gaskins turned left into Palmetto Park Road, young Dehon following him, but when he "Gaskins" had gone about two hundred feet after he turned, he heard a crash. He returned to the locale of the crash and found the body of young Dehon on the west side of the road about one *Page 41 
hundred and twenty feet southwest from where he was struck. His servi-cycle was about one hundred feet from where it was struck on same side of the road. The defendant's car which collided with the servi-cycle was traveling south and came to rest on the east side of the road about opposite the body of the deceased.
The evidence is not clear as to the exact location of Dehon's servi-cycle when it was struck by defendant's car. It is evident that Dehon was pursuing Gaskins and that the collision took place near the middle of the highway. From the diagram introduced in evidence, the marks made by the servi-cycle were in the middle of the road but the skid marks made by defendant's car from approximately the point of impact to the point where it came to rest are in the east lane of travel or on Dehon's side of the road. The driver of defendant's car testified that he was traveling 45 miles per hour, that the car was under control, in good condition and would light the road four hundred feet, that deceased appeared in front of him suddenly, only a few feet away, and that in attempting to miss him he crossed into deceased lane of travel. Deceased weighed 167 pounds, was five feet ten inches tall, and had a good high school record, and his servi-cycle weighed over 200 pounds.
Appellee contends that the directed verdict was proper because the evidence as to negligence was circumstantial and speculative and devoid of any showing that it was the proximate cause of the accident. It is true that the evidence must show that defendant's negligence was the proximate cause of the accident but this may be proven as conclusively by circumstantial as by parole evidence. When a dead boy emerges from the collision the element of "speculation" vanishes. When the evidence shows that he weighed 167 pounds, was knocked approximately 120 feet and the servi-cycle on which he was riding was knocked approximately 100 feet, it takes more than a mere denial of negligence on the part of defendant to exculpate him under the circumstance shown here. Added to this, it is shown that 217 feet north of the intersection of Highway AIA and Palmetto Park Road there was a "side road" warning and that 222 feet north of this sign there was a "slow" warning. Did defendant give heed to these warnings and would the accident have occurred if he had? Likewise the bent and warped condition of the servi-cycle, the marks it made in the road, the bent condition of the right fender and front of defendant's car and the skid marks made by it on Dehon's lane of travel were all mute evidence that entered into the determination of whose negligence was responsible for Dehon's death.
Such were the main factors confronting the Court at the conclusion of the trial. Whether or not they show negligence on the part of the defendant was a pure question of fact for the jury to determine. The Court was therefore in error when he undertook to decide the point and direct a verdict for the defendant. It may be admitted that the parties to this tragedy were where they had a right to be but when one drives his automobile through a community he is charged with knowledge of the rules of the road and whether or not he was observing them becomes important. In other words, whether or not he was giving due heed to the most elementary road etiquette which common courtesy requires that he extend every other person who happens to be on the road. Negligence vel non is always relative. One may take his chances and drive at a rapid speed and not be charged with negligence if he injures no one. Then, if he maims or kills some one driving at comparatively low speed he may be negligent, depending on the circumstances which are always the determinating factors.
The question of negligence in this case is by no means concluded by that of whether or not there was an eyewitness to the tragedy. The eyewitness rule was no doubt a sound legal concept when evolved and may still be applied in some cases, but with the advent of the automobile and night driving it is as antiquated and outmoded in a case like this as a blunderbuss would be for military equipment. We live in a world of change and infinitely complex relationships and legal concepts *Page 42 
must be continually galvanized against the static and complacent posture, otherwise they are useless or ridiculous and serve no useful purpose. Agronomists tell us that from 1840 to 1900 the labor factor required to produce a bushel of wheat was reduced from three hours to ten minutes. It is now estimated that this labor factor has been reduced to ten seconds. Travel, business, agriculture, industry and most every phase of social and economic life have been stepped up to a like pace. Hence it becomes imperative continually to rethink and recast rules of procedure to make them adequate for the adjudication of controversies arising from these changing conditions. There was never an instance that more aptly illustrates the futility of applying an outmoded rule of procedure to a motor age case. It closed the door in the face of appellant in this case. If Dehon's death was the direct result of defendant's negligence or the natural sequence or probable result of it, the jury may find for the plaintiff. If the defendant in other words did not exercise prudent forethought, he is responsible for the reasonable and probable results of his negligence. Seaboard Air Line Ry. v. Mullin, 70 Fla. 450, 70 So. 467, L.R.A. 1916D, 982, Ann.Cas. 1918A, 576; Stallings v. Georgia Power Co., 67 Ga. App. 435,20 S.E.2d 776.
So the real point here is whether or not the accident might have been avoided if defendant had exercised prudent forethought in driving through the Town of Boca Raton. It turns on the reasonable probabilities that may be drawn from the evidence. Some reasonable deductions from the evidence are (1) that defendant was proceeding south on the highway and that deceased was proceeding north in pursuit of Gaskins. (2) He did not appear on the spot suddenly but was there continuously from the point he and Gaskins met, 600 feet south of the intersection to where the accident took place, about 50 feet south of it, and (3) the accident took place as Dehon was turning into Palmetto Park Road.
In the light of these and other facts did defendant observe the "Side Road" and "Slow" warning signs he had recently passed, was his speed in conformity with reason under the circumstances, was he driving on his side of the road, and if he was, why the skid marks of his car and most of the physical evidence on the side of deceased? The bent condition of the servi-cycle, the marks it made in the road, the condition of the right fender and front of defendant's car, the skid marks it made in Dehon's lane of travel and the distance of his body and servi-cycle from the point of impact were the factors to guide the jury to a determination of whether this tragedy was the result of an unavoidable accident or negligence.
One driving an automobile through a community by "slow" and "side road" warnings should have it under complete control. He is due others who may be on the road that degree of care. From the evidence is it reasonably probable that defendant's agent was exercising that degree of care? Such was the question that the jury was precluded from answering.
The judgment is accordingly reversed and a new trial granted.
Reversed.
THOMAS, C.J., and CHAPMAN and SEBRING, JJ., concur.