GALE HONEY, AN INFANT, BY HER GUARDIAN *AD LITEM*, HAROLD HONEY, Sr., *ET AL.*, PLAINTIFFS-RESPONDENTS, v. CHARLES S. BROWN AND CLAUDE S. CYPHERS, DEFENDANTS-APPELLANTS.

Argued September 10, 1956—Decided November 5, 1956.

*Mr. Verling C. Enteman* argued the cause for the appellants (*Messrs. McCarter, English & Studer,* attorneys).

*Mr. Edward R. McGlynn* argued the cause for the respondents (*Mr. Philip Tulipan,* attorney; *Mr. Roger H. McGlynn* and *Mr. Maximilian Morrof,* on the brief).

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal from a judgment of the Appellate Division which affirms a judgment in favor of the plaintiffs-respondents and against the defendants-appellants in an action for personal injuries sustained in an automobile accident. A motion for a new trial on the ground that the verdict was against the weight of the evidence and the result of mistake or passion was denied by the trial court. The Appellate Division held that under the evidence there was a question for the jury on the question of negligence and further held that the action of the trial court on the motion for a new trial will not be disturbed "unless it clearly and unequivocally appears there was a manifest denial of justice under the law." *Harlpence v. Grouleff,* 15 *N. J.* 545, 549 (1954). Certification was granted on application under *R. R.* 1:10–2(*d, e*).

The plaintiff-respondent Ruby Honey, accompanied by her two infant children, was driving on Route 69 in rain and fog

on the night of December 21, 1953. At about 11:15 P. M. she was traveling south of Oxford, where the highway levels off after an upgrade of about a thousand feet. At that point in the road there is a two-lane concrete highway; to the right is a 15-foot-wide hard dirt shoulder, and beyond that an embankment. The defendant Brown's tractor-trailer was parked on the dirt shoulder, its right wheels against the embankment, its left wheels about six or seven feet off the concrete and directly across the highway from a service station and diner.

The plaintiff-respondent Ruby Honey testified that when she reached this point on the highway the fog was so thick she slowed down. She could not see the white line in the middle of the road and she decided to pull her car on the dirt shoulder and park until the fog lifted. As she did so the right front side of her car struck the left hand corner of defendant Brown's tractor-trailer. She testified her headlights were lit, that she did not see the defendant's truck until she "saw an object a split second before the accident actually happened" and "it looked like I was going into a wall or something." Then the following two questions were asked her by counsel for the defendants:

"Q. Did you see any lights on any—on this thing that looked like a wall?
A. No sir.
Q. Did you see—do you recall the last question?
A. Did I see the lights? No sir."

The defendant Brown testified that he had parked on the shoulder of the road to check the conditions of the pavement. After checking the road he checked his rear tires and noticed his rear lights were illuminated, then he got into the cab of the truck and was about to proceed when he noticed the headlights of a car about 125 feet to his rear, then came the crash. Four other witnesses testified that upon their arrival within 15 minutes or more after the accident the truck's rear lights were lit but they were unable to testify whether the lights were lit at the time of the accident. One of these witnesses,

the driver of a companion truck, testified that when he passed the trailer truck in Pennsylvania at about 8:00 P. M. all the rear lights were lit, but it is to be noted that this accident happened about 11:15 P. M.

Mrs. Barna, the wife of the owner of the diner across the road, testified that the diner was not open at the time of the accident, that she had the television on but that there had been some interference from some motor outside for a few minutes. Suddenly there was a loud crash and she ran to the front window and looked out but she did not see anything and it was pretty foggy. When she went to check the children to see if they had caused the noise she found out they had not. Then she went to her own room and looked out the window and she saw somebody with a flashlight waving it and she saw the truck and all the lights were on the truck and she ran downstairs.

Appellants made the point on all their motions and on the appeal "that nowhere in this record did anyone testify there were no rear lights illuminated on the truck." They argued that plaintiff's witnesses on liability testified that the truck's lights were immediately illuminated after the accident; on the other hand, the defendant's witnesses testified the lights were illuminated prior to and at the time the accident occurred and that no one testified that the lights were not lit at the moment of or just preceding the accident. This is taking a very narrow and limited view of the evidence.

The fact that Mrs. Honey never saw the truck would not have made it physically impossible for her to see the lights ahead had they been illuminated, and acknowledging that she was a most interested witness, her statement that she saw no lights on the "wall" that loomed before her is practically tantamount, in view of all the circumstances, to saying that the truck lights were not lit. Mrs. Barna's testimony on the other hand is open to the inference that if the lights were lit when she looked out the first window she would have seen them since when she looked out of the second window a few minutes later she not only saw the flashlight light but the lights on the truck.

█ █ It is well settled that the court, on motions to dismiss, must accept as true all evidence supporting the claim of the party against whom the motions are made, together with all legitimate inferences to be drawn therefrom. Where fair-minded men might honestly differ as to the conclusion to be drawn from the evidence, the issue should be submitted to a jury. *Pirozzi v. Acme Holding Co., etc.,* 5 *N. J.* 178, 185 (1950). As the Appellate Division said, "Here, the issue of the defendants' negligence turns upon the single question as to whether or not the rear lights on the trailer were lighted at the exact moment of the collision. See *Niles v. Phillips Express Co.,* 118 *N. J. L.* 455 (*E. & A.* 1937)."

█ Testimony is affirmative or positive if it consists of statements as to what a witness has heard or seen; it is negative if the witness states he did not hear or did not see the phenomenon in question. While positive testimony is generally preferred to negative testimony, the determination of a dispute as to the relative weight of conflicting statements must take account of attending circumstances and a jury should be directed to consider the facts and circumstances of the case in order to prevent an unjust operation of the rule, particularly in a situation when negative testimony is given together with corroborating circumstances that add to its weight. 3 *Jones on Evidence, Civil Cases* (*4th ed.*), sec. 898a *et seq.;* 2 *Wigmore on Evidence* (*3d ed.*), sec. 664. Our law is to the same effect, as pointed out by the Appellate Division, that the weight to be accorded testimony in such a situation is a matter for the jury, unhampered by any fixed formula. *Napodensky v. West Jersey, etc., R. Co.,* 85 *N. J. L.* 336, 339 (*E. & A.* 1913) ; *Rynar v. Lincoln Transit Co., Inc.,* 129 *N. J. L.* 525, 533 (*E. & A.* 1943) ; 2 *Wigmore on Evidence* (*3d ed.*), sec. 664, *p.* 777. *Cf. Niles v. Phillips Express Co., supra,* and *Rapp v. Public Service Coordinated Transport, Inc.,* 15 *N. J. Super.* 305 (*App. Div.* 1951), affirmed 9 *N. J.* 11 (1952).

█ We therefore conclude there was a question of liability, in view of the testimony, that was correctly submitted to

the jury and should not be disturbed by us. *Hartpence v. Grouleff, supra.*

The appellant Cyphers argued that he is not *ipso facto* liable under his Interstate Commerce license or franchise for the negligence of the defendant Brown, who was an independent contractor at the time of the accident. Cyphers held such license. At the time Brown was transporting coal from Pennsylvania to New York under the license held by Cyphers. The tractor-trailer was owned and operated by the defendant Brown. The trial court relying solely on our decision in *Trautman v. Higbie,* 10 *N. J.* 239 (1952), charged the jury that if the defendant Cyphers in fact held an interstate license or franchise and there was a contract between the defendant Cyphers and the defendant Brown, that if the defendant Brown was negligent, defendant Cyphers would be liable. Defendant Cyphers offered to argue this question before the Appellate Division but that court assuming it was bound by *Trautman v. Higbie, supra,* stated it did not wish to hear argument on this matter.

■■ Appellant now argues that the statement in *Trautman v. Higbie, supra,* was *dictum,* and in a technical sense this is perhaps so, but the question was decided because it was implicit on the question of liability in the trial which was to follow. Now since the question is squarely raised here we reiterate our holding in *Trautman v. Higbie, supra,* in which we said, 10 *N. J.,* at *page* 244:

"We subscribe to the rule as laid down by the majority of the cases, particularly those in the federal courts, that where one operates a vehicle under a governmental franchise in the field controlled thereby he assumes liability for the acts done by others to whom he grants permission to use that franchise."

In addition to the cases cited in *Trautman v. Higbie, supra,* 10 *N. J.,* at *page* 244, see *Restatement of Torts, sec.* 428; Annotation 134 *A. L. R. 2d* 1121. *Lehman v. Robertson Truck-A-Way,* 122 *Cal. App. 2d* 82, 264 *P. 2d* 653 (*Cal. D. Ct. App.* 1953).

The judgment is affirmed.

440 

*For affirmance as to Brown*—Justices OLIPHANT, WACHEN-FELD, BURLING and JACOBS—4.

*For reversal as to Cyphers*—Justice HEHER—1.