230 So.2d 730 (1970)
Emmett FRANKLIN, Appellant,
v.
DADE COUNTY, a Political Subdivision of the State of Florida, Appellee.
Judy A. SHULER and Her Husband, Robert Shuler, et al., Appellants,
v.
DADE COUNTY, a Political Subdivision of the State of Florida, Appellee.
Nos. 69-222, 223.
District Court of Appeal of Florida. Third District.
January 20, 1970.
Rehearing Denied February 17, 1970.
*731 Colson & Hicks, Podhurst & Orseck, Miami, for appellants.
West & Goldman, Miami, Joe N. Unger, Miami Beach, for appellee.
Before CHARLES CARROLL, BARKDULL and HENDRY, JJ.
CHARLES CARROLL, Judge.
These two actions arose from a collision which occurred at the intersection of U.S. Highway No. 1 and Southwest 144th Street in Dade County, between a 1955 Chevrolet being driven north on U.S. 1 and a Dade County police car proceeding west on the intersecting cross street, the latter being controlled by a stop sign. Benjamin Franklin, aged 19 years, who was driving the Chevrolet, was killed. His father, Emmett Franklin, sued Dade County (and other defendants who were eliminated from the cause prior to trial) under the wrongful death statute, § 768.03 Fla. Stat., F.S.A. In a separate action Judy A. Shuler, aged 20 years, who was a passenger in the Chevrolet, sued Dade County (and other defendants who were eliminated from the cause prior to trial) for damages for personal injuries. She was joined therein by her then husband Robert Shuler (from whom she became divorced prior to trial), who claimed derivative damages. There were two police officers in the county car. The one who was driving was killed.
As the basis for seeking damages claimed to have been caused by negligence of the defendant's driver, each of the complaints alleged the following:
"4. That on or about May 7, 1967, at approximately 3:10 a.m., Paul Gotthardt Anderson, Jr., while acting in the scope and course of his employment for the Public Safety Department, Dade County, Florida, and while operating his police vehicle in a negligent, careless and reckless manner in a westerly direction on S.W. 144th Street, Dade County, Florida, ran the stop sign controlling traffic on said S.W. 144th Street, and violently collided with a motor vehicle proceeding in a northerly direction on U.S. Highway No. 1 causing * * *."
In answer to each of the complaints the county admitted that its vehicle was being driven by a police officer in the scope and course of his employment for the county, denied negligence and pleaded contributory negligence.
*732 The two actions were consolidated, and trial thereof was had before a jury. At the close of the plaintiffs' case, and again after both sides had rested the defendant moved for directed verdicts. The motion was granted as to the derivative damage claim of Robert Shuler, who did not appear at the trial, and on whose behalf no evidence of loss was presented. Ruling on the defendant's motion for directed verdicts was reserved as it related to the other plaintiffs, and the cause was submitted to the jury on the issue of negligence. For want of sufficient evidence relating thereto, the pleaded issue of contributory negligence was not submitted to the jury. Separate verdicts were rendered in favor of the plaintiffs, and judgments were entered on the verdicts.
Timely post trial motions included a motion of the defendant county, under Rule 1.480(b) RCP, 30 F.S.A., for entry of judgments in its favor in accordance with the prior motions for directed verdicts. The trial court granted that motion and entered judgment in favor of the defendant Dade County in both cases. These appeals were filed therefrom by the respective plaintiffs.
The theory on which the trial court granted the defendant's motion for judgments after verdict was that the evidence presented by or on behalf of the plaintiffs was insufficient to establish a prima facie case of negligence of the driver of the county vehicle.
In Whitman v. Red Top Sedan Service, Inc., Fla.App. 1969, 218 So.2d 213, 215, this court said:
"A trial court's consideration of a defendant's motion for directed verdict is governed by a rule as stated by the Supreme Court in Mullis v. City of Miami, Fla. 1952, 60 So.2d 174, 176, viz: `The court should not direct a verdict for the defendant, unless it is clear that there is no evidence whatever adduced that could in law support a verdict for plaintiff.' See also Chambers v. Loftin, Fla. 1953, 67 So.2d 220, 221; Cadore v. Karp, Fla. 1957, 91 So.2d 806; Paikin v. Beach Cabs, Inc., Fla.App. 1966, 187 So.2d 93, 94; Guerriero v. Adams, Fla.App. 1966, 190 So.2d 432, 433. That same rule applies when ruling has been reserved and the court has for consideration a defendant's motion after verdict for judgment based on the motion for directed verdict. This is so because under the present practice, provided for by rule 1.480 RCP, the ruling made is a deferred ruling on the motion for directed verdict. A substantially similar rule was held to govern the trial court in disposing of a motion for judgment notwithstanding the verdict under the former practice. See Deese v. White Belt Dairy Farms, Inc., Fla.App. 1964, 160 So.2d 543; Smith v. Peninsular Insurance Company, Fla.App. 1966, 181 So.2d 212 [19 A.L.R.3d 1326]; Love v. Adams, Fla.App. 1967, 194 So.2d 55."
On review of these judgments, which are based on the granting of the defendant's deferred motions for directed verdicts, we are required to observe the rule as announced in Rodi v. Florida Greyhound Lines, Fla. 1952, 62 So.2d 355, and numerous other Florida appellate decisions, that the reviewing court should consider the evidence presented in the cause in the light most favorable to the plaintiffs, disregarding conflicts in the evidence and indulging in plaintiffs' favor every reasonable intendment deducible therefrom. See Hardware Mutual Casualty Co. v. Tampa Electric Co., Fla. 1952, 60 So.2d 179, 40 A.L.R.2d 1293; Brightwell v. Beem, Fla. 1956, 90 So.2d 320, 322; Guhman v. Florida Power & Light Company, Fla.App. 1962, 139 So.2d 749, 750; Guerriero v. Adams, supra, FlaApp. 1966, 190 So.2d 432.
On so considering the evidence presented by and on behalf of the plaintiffs, with the benefit of intendments reasonably deducible therefrom, we hold that the able trial judge was in error in concluding, as it was essential to do in granting the deferred motion for directed verdicts and the judgments for defendant, that there was no evidence adduced sufficient in law to support the verdicts which the jury rendered for the plaintiffs.
An eye witness to the accident, a man named Andy Aaron, testified that as he was driving north on U.S. 1 in the right-hand lane of the two northbound traffic lanes, at a speed of 35 to 40 miles per hour, returning to his home in Coconut Grove *733 after having attended a party, a car pulled onto the highway ahead of him from a drive-in theatre; that the car accelerated to a speed of 40 to 45 miles per hour and so proceeded in the right-hand lane, and at the time of the accident was ahead of him a distance of between 150 and 200 yards; that as the car ahead of him reached 144th Street he saw the lights of the other car involved in the collision before the two cars came together, and then the lights went out; that he drove past the intersection after the collision, parked his car and returned on foot to the scene. Aaron testified that he did not hear any (police car) siren or see any red light; and testified that his car windows were open ("down") and that his radio was not on.
One of the investigating officers, Bera Pitts, a deputy sheriff, testified that he was on duty in another police car at the time of the accident; that he received a radio message from his supervisor to the effect that a police officer had been killed at the intersection in question "as a result of a high-speed chase"; that "we" (that is, Pitts and his companion officer) first apprehended the people whom the police car was reported to have been chasing, and then proceeded to the scene of the accident, arriving there at 3:17 o'clock; and that he assisted in the investigation. He further testified that the speed limit on U.S. 1 was 45 miles per hour; that the intersecting street was controlled by a stop sign; and that at the time of the accident the street was dry and the weather clear.
The nature and extent of the damage to the cars, as revealed by the evidence including photographs, was such as to demonstrate that the collision was one of considerable, if not great force. The front and right corner of the Chevrolet and the left front corner of the police car met. From the photographs in evidence, the testimony of the investigating officer and the markings made by him on the surveyor's sketch of the intersection area, it was disclosed that as a result of the impact the Chevrolet was propelled, almost directly to the left from its line of travel, a distance equivalent to the width of five traffic lanes. That distance was made up of the left-hand northbound traffic lane of U.S. 1, the portion of the intersection consisting of the distance between the northbound and the southbound traffic lanes, which was shown by the survey to be more than the width of two traffic lanes, the inside southbound traffic lane, and well into the far or outer southbound traffic lane. In reaching that point the Chevrolet left intermittent marks which the investigating officer described as "skip marks," and of which marks he said: "They appeared as though the car [Chevrolet] were bouncing." The police car continued through the intersection, generally in line with the intersecting cross street, coming to rest slightly north of the Chevrolet, partly on and partly beyond the western lane for southbound traffic on U.S. 1. In proceeding across the intersection after the impact the police car left gouge marks, as to which the officer stated: "There was gouge marks in the asphalt in the direction running similar to this from approximately here like this (indicating)." The officer's marks on the survey chart to which he thus referred in his testimony indicated such gouge marks through the middle area of the intersection and in the southbound lane of U.S. 1, in the line in which the investigating officer indicated the police car traversed the intersection and leading to the place where it stopped.
Upon presentation of the plaintiffs' evidence, including that above referred to, and with evidence relating to damages, the plaintiffs rested. The plaintiff Judy Shuler, who was a passenger in the Chevrolet, was unable to testify to the circumstances of the accident because brain damage which she received therein had resulted in her inability to recall the facts of the occurrence. The surviving passenger officer in the police car did not testify at the trial. After the plaintiffs rested, the only evidence presented on behalf of the defendant county was a showing that the plaintiffs Judy Shuler and her husband Robert Shuler *734 had been divorced prior to trial, and that the witness Aaron, on a prior occasion, had pleaded guilty to a charge of assault and battery.
Two traffic ordinances of the Code of Metropolitan Dade County were involved. One, relating to entering stop intersections, provides that the driver of a vehicle is required to stop in obedience to an intersection stop sign and to proceed cautiously, yielding to vehicles not so obliged to stop which are in the intersection or approaching so close as to constitute an immediate hazard. § 30-51. The other, relating to authorized emergency vehicles, provides that when in pursuit of an actual or suspected law violator (and in other listed emergencies not material here) the driver of an authorized emergency vehicle may, among other things, "proceed past the red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation," and "exceed the maximum speed limits so long as he does not endanger life or property." That ordinance contains a proviso that the foregoing are permissible "only when the driver of said vehicle sounds a siren, bell, or exhaust whistle and the vehicle displays a red or blue lamp visible from the front as hereinafter required, as a warning to others." The ordinance adds that the foregoing "shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons." § 30-7. In charging the jury, the trial court duly informed them with regard to those traffic regulations.
Appellee county argues that the judgments in its favor should be affirmed because a finding of negligence of the defendant county's driver could be reached only by improperly piling inference on inference. We do not agree.
In this case the fact that a collision occurred, and the positions of the two vehicles just prior thereto were shown not only by circumstantial evidence, but by testimony of the witness Aaron. The jury was entitled to resolve the issues of negligence and proximate cause against the county if they found that the driver of the police car proceeded into the through street from the intersecting "stop" street in a manner which was in violation of one or the other of the two ordinances above referred to. In our view the jury reasonably could and no doubt did so find from the evidence.
In addition to the testimony of the witness Aaron, which so indicated, the circumstantial evidence was such as to give rise to a primary inference that the police car entered the intersection at high speed, traveling west on the cross street. That inference is one which is elevated to the dignity of an established fact, outweighing all reasonable inferences to the contrary, on considering the severity of the resulting injuries, the nature and extent of the damage to the vehicles and particularly the showing that the police car entering from a cross street supplied the predominating directional force sufficient to stop the (40 to 45 miles per hour) Chevrolet in its tracks and force it to the left, almost at a right angle to its direction of travel, a distance of 40 to 50 feet. That primary inference alone was sufficient upon which to find that the police car had failed to stop at the intersection (as required by the ordinance applicable to drivers generally), since it is obvious that no force sufficient to have that effect on the Chevrolet could have been generated by a vehicle which had stopped and was entering the intersection with caution. Compare Dehon v. Heidt, Fla. 1949, 38 So.2d 39, 41.
However, as disclosed by testimony of the investigating officer, and as implied by the circumstantial evidence, it was shown that the police car was involved in an emergency action in the nature of a high speed chase. Moreover, counsel for the county so stated in his opening statement to the jury. That being so, the jury could have found that the driver of the police car was guilty of negligence proximately causing *735 the collision by imposing on the primary inference that the police car entered the intersection at high speed a further inference that the police car was driven into the intersection past the stop sign in a manner which was in violation of the provisions and restrictions imposed on the driver of such vehicles by the emergency ordinance. To apply that second inference does not violate the rule against piling inference on inference. This is so because it is proper to impose a second inference which is deducible from the evidence, upon a primary inference established by circumstantial evidence which is one that is elevated to the dignity of an established fact in that it outweighs all reasonable inferences to the contrary.
A second inference which a trier of fact may impose on such a primary inference can be one of several reasonable inferences which could be adduced from the evidence, as aided by the primary (ultimate fact) inference. See Voelker v. Combined Ins. Co. of America, Fla. 1954, 73 So.2d 403, 407; Commercial Credit Corporation v. Varn, Fla.App. 1959, 108 So.2d 638, 640; Finer Foods, Inc. v. Shepherd, Fla. App. 1963, 156 So.2d 390, 392; Dehon v. Heidt, supra, Fla. 1949, 38 So.2d 39, 41. Therefore, the jury was entitled to infer that the driver of the county vehicle, in the course of proceeding through the intersection at high speed, failed to observe the precautions required in such circumstance by the county's emergency vehicle ordinance. This is so in spite of the presence of other matters, on the basis of which the appellee argued that notwithstanding the county's driver may have entered the intersection at high speed it could be inferred that he did so without negligence.
The appellee argued that even if the police car was engaged in a high speed chase and proceeded into the intersection without slowing down, negligence could not properly be inferred therefrom because the evidence afforded basis for other reasonable inferences that such action was due to defective brakes on the police car.
In the plaintiffs' case certain evidence was presented relating to the condition of the brakes on the police car. It was shown they had been overhauled and were in good condition three weeks previously. It was also shown upon inspection of the police car after the collision that the hydraulic brake line leading from the master cylinder was severed and that a portion of the brake line was smashed. It was contended by the appellee that on the basis of the latter evidence it would be reasonable to infer that such damage to the brake system did not come about in the collision, but had occurred sometime earlier, rendering the brakes inoperative prior to and at the time of the collision.
Also, evidence was adduced in the course of the plaintiffs' case that if the brakes were used in making four or five sudden stops when proceeding at speeds of approximately 75 miles per hour in the course of a high speed chase, a condition known as "brake fade" could occur, causing the brakes to fail to hold on a subsequent application at high speed. The appellee argued that on the basis of that evidence it would be reasonable to infer that if the police car entered the intersection at high speed it was because of brake fade, and therefore without negligence. However, there was no evidence that the police car had made such number of stops during the course of the high speed chase, and an examination of the brakes after the accident failed to disclose them to be in that condition. Also, it was shown that the driver of the police car had been instructed regarding the cause of "brake fade," and when and from what it might be expected to occur.
Assuming those inferences suggested by the appellee were reasonable, and were equally to be considered by the jury along with an inference that the entrance of the police car into the intersection at high speed was done negligently, the jury was free to accept the last mentioned inference and to impose it upon the primary ultimate fact inference that the police car entered *736 the intersection at high speed. The existence and availability of such evidence, which would support verdicts of the plaintiffs, was such as to preclude the direction of verdicts for the defendant.
A further ground for upholding the plaintiffs' verdicts in these cases is that there was some evidence that the driver of the police vehicle, in proceeding past the stop sign in the course of a high speed chase in an authorized emergency action, was not sounding a siren and displaying a warning light, since under the terms of the ordinance it was necessary that those warning devices be in operation as a condition of use of the granted authority for emergency vehicles to run past a stop sign or to exceed a speed limit. The testimony relating thereto, given by Aaron (who was following the Chevrolet on U.S. 1) was that he did not hear a siren or see a red light.
We have found no Florida decision which has passed on the question of whether such negative testimony, when not opposed by positive testimony to the contrary, can support a finding of the absence of a warning signal. However, in Tyus v. Apalachicola Northern Railroad Company, Fla. 1961, 130 So.2d 580, 584, the Supreme Court of Florida stated that it had not held or inferentially suggested that such negative testimony as to the absence of (train) signals would not make an issue, in the face of positive testimony that the signals were given. If negative testimony of the absence of warning signals can create an issue against positive contrary testimony, it would appear that it could have sufficient probative force to support a finding that signals were not given or operating, when there is no testimony to the contrary. See Washington v. City and County of San Francisco, 1954, 123 Cal. App. 235, 266 P.2d 828, 832.
Whether negative testimony of this character is entitled to be accorded that weight in a given case would appear to depend upon the circumstances, such as whether the attention of the witness was directed to the matter, and if not, then upon judging the likelihood that the warning signals, if present, would have been heard or seen, on considering the character and intensity which such signals are known to possess and the position of the witness with relation thereto. See Missouri Pac. R. Co. v. Peters, 220 Ark. 657, 249 S.W.2d 304, 306; Lee v. Missouri Pacific Railroad Company, 152 Colo. 179, 381 P.2d 35, 38; Black v. Kansas City Southern Railway Company, Mo. 1968, 436 S.W.2d 19, 23; Honey v. Brown, 22 N.J. 433, 126 A.2d 354, 356-57; Goodner v. Chicago, Milwaukee, St. Paul & Pac. R. Co., 61 Wash.2d 12, 377 P.2d 231, 234-35; 32A C.J.S. Evidence § 1037 at 715-721; Anno. 98 A.L.R. 161, 165; Anno. 140 A.L.R. 530, 531; Anno. 162 A.L.R. 10; 2 Wigmore on Evidence § 664 at 778 (3d ed. 1940).
Here it was not shown whether the attention of the witness Aaron was directed to the presence or absence of such signals (and there was no reason for his attention to be so directed). However, it was disclosed that he was proceeding in the direction of the intersection, with his car windows down, in an unincorporated area of the county, a distance of 150 to 200 yards from the place where the signals would have emanated if being given. Therefore, in considering the negative testimony of the witness Aaron relating to the absence of such signals, it was within the province of the jury as reasonable men of common sense to consider whether a police car siren, if being sounded, would have been clearly audible, or its warning light, if flashing, would have been readily visible to an approaching motorist in such circumstances, and to find that the signals were not operating (and that therefore the driver of the police car was negligent), or to reject such negative testimony, depending on the weight given thereto.
For the reasons stated, the judgments appealed from are reversed, and the cause is remanded with directions to reinstate the verdicts and the judgments for plaintiffs initially entered thereon.
Reversed and remanded with directions.