287 So.2d 139 (1973)
METROPOLITAN DADE COUNTY, a Political Subdivision of the State of Florida, and the Metropolitan Dade County Water and Sewer Board, Appellants,
v.
The BABCOCK COMPANY, a Florida Corporation, Appellee.
No. 73-534.
District Court of Appeal of Florida, Third District.
December 21, 1973.
*140 Stuart L. Simon, County Atty., and Alan S. Gold, Asst. County Atty., for appellants.
Sibley, Giblin, Levenson & Ward, Miami Beach, for appellee.
Before CARROLL, HENDRY and HAVERFIELD, JJ.
PER CURIAM.
By this appeal Metropolitan Dade County and its Water and Sewer Board, the defendants below, seek reversal of a judgment of the circuit court, entered upon a petition for certiorari, quashing a ruling of the Board which had denied an application made by the appellee for temporary use of septic tanks for residences to be placed on 38 lots in a real estate development of the appellee, and directing the defendants to grant the application.
Involved in the proceedings before the Board were the said 38 lots and seven additional lots of the appellee. The lots were located west of the Palmetto By-pass and north of the right-of-way of the proposed Snapper Creek Expressway, being within a county service area for the furnishing of water and sewer services.
The situation disclosed was that after having entered into a contract with the developer for furnishing such sewer service, with the developer to supply connection facilities therefor, the Board determined that capacity was lacking to supply the needs of all who desired such service, and proceeded to make allocations of partial capacity or supply of the service thereto. After public hearing the Board made an allocation of 29% of available capacity to Tract A of the development of the appellee Babcock, and denied an allocation to Babcock's Tract B, with leave to reapply after 90 days. Babcock petitioned the Board for temporary use of septic tanks to service 45 single family residences to be constructed in its Tract B. Following consideration thereof at public hearing, the Board entered its order, which contained the following findings:
"The Staff agreed that, though the proposed lots were relatively large, the development should be expected to be relatively high-priced single-family dwellings and that for such a development the cost of sewers should not be considered unreasonable, at least for those 38 lots proposed to be created from Parcel 5. The seven (7) remaining lots, a subdivision of Parcel 5A, would be both larger and more remote from existing facilities, and the use of septic tanks on those lots more reasonable."
The ruling of the Board in its order was as follows:
"1. The request for temporary use of septic tanks on the thirty-eight (38) lots of Parcel 5 is hereby denied.
*141 "2. The request for the temporary use of septic tanks on the seven (7) lots of Parcel 5A is hereby approved."
The circuit court held the Board's denial of the Babcock application was arbitrary and capricious, having no relation to public health, safety and welfare in respect to sewer services.
The application by Babcock, and the order of the circuit court directing the granting thereof for the 38 lots, expressly specified temporary use of septic tanks, which meant permission for use thereof until the proposed and intended sewer system service should be made available. In its sworn application Babcock agreed "to connect to both the water system and sewer system when such are constructed adjacent to said property or to make arrangements if necessary to connect to the main at such time as it is about to be constructed." The obligation of Babcock, as confirmed in its said application, had been set out in its contract, as follows:
"1. To connect to both the water system and sewer system when such are constructed adjacent to said property or to make arrangements if necessary to connect to the main at such time as it is about to be constructed. Such arrangements being as indicated in the following paragraph.
"2. To make a contribution to the utility (or its successor) toward the cost of such main extension in equal proportion to the contributions made by other persons connecting to the main extension.
"3. The undersigned further agrees that this condition, restriction and limitation shall be deemed a covenant running with the land, and shall remain in full force and effect and be binding upon the undersigned, their heirs and assigns until such time as the same may be released by written order of the Metropolitan Dade County Water and Sewer Board or its successor."
The appellants contend that, contrary to the conclusion reached by the trial court, the denial of the Babcock application was reasonable and proper because of the refusal of Babcock to comply with a policy of the Board that a developer receiving a permit for temporary use of septic tanks should presently install the sewer facilities for connection to the system when it should become available, including a line for connection to the main. The Babcock contract, to provide the facilities for connection to the sewer service and to the main when the service should be available, would not require their construction prior to the time specified. We agree with the appellee that the condition imposed for prior construction thereof by Babcock, if it was the reason for denial of the permit, was not reasonable, if construction could be made when needed.
However, the appellants argue that such requirement was reasonable because it would be necessary for a line connecting with the main to be run across or under the area upon which the said expressway was to be constructed at that point, which would be more feasible presently than later. It appears that at the time the application was being considered in November and December of 1972, such line for connection to the main could have been run without difficulty, without the need for a permit prior to January 1, 1973, and after that date upon a permit which would have been granted upon request, prior to construction of the expressway there.
The appellants argue that the refusal of the developer to presently install the sewerage connection facilities in the development and to run the line for connection with the main, was because through expected later difficulty or possible impracticality of running a line to connect with the main after construction of the expressway, the developer hoped thereby to gain permanent use of septic tanks for said lots and save the expense of the sewer service connection. We find no reason to attribute such a devious or ulterior *142 motive to Babcock, inasmuch as Babcock has contracted to make the sewer connection installations at the proper time, even though its election to delay such performance could make the same more difficult and expensive.[1]
In the meantime, in view of the obligation of the appellee-developer under its contract to make such installations and connection with the main when the sewer service is made available or is about to be constructed, we are impelled to conclude that the trial court did not commit error in quashing the order of the Board denying the Babcock application for temporary use of septic tanks to the lots in question.
Affirmed.
NOTES
[1] See 17 Am.Jur.2d, Contracts § 402. The general rule is that supervening impossibility of performance (being that which is due to something that develops after the inception of a contract) is not an excuse for non-performance of a contract. Ibid. § 404. Also, a contracting party will not be relieved from his agreement to perform because of an inability that develops which could have been prevented or avoided, and a promissor will not be permitted to take advantage of an obstacle to performance which he has created or which lay within his power to remove or avoid. Ibid. § 407.