353 So.2d 160 (1977)
Ramon B. FISCH, Appellant,
v.
Burton RADOFF, and Edgewater Beach Hotel, Inc., a Florida Corporation, Appellees.
No. 76-1781.
District Court of Appeal of Florida, Third District.
November 29, 1977.
Rehearing Denied January 4, 1978.
*161 Podhurst, Orseck & Parks and Michael S. Olin, Miami, for appellant.
Friedman & Britton and Arnold D. Schatzman, Miami, for appellees.
Before HENDRY, C.J., and NATHAN and KEHOE, JJ.
NATHAN, Judge.
This is an appeal by Ramon B. Fisch, a real estate broker and plaintiff below, from an adverse final judgment pursuant to a directed verdict in a breach of contract action against a corporation and its president.[1] The primary issue to be decided is whether any evidence adduced at trial could support a jury verdict for the plaintiff. We find such evidence in the record and reverse the decision below.
The essential facts are as follows. On August 2, 1974, after extensive negotiation, the parties entered into a "Multiple Listing Agreement," a form of employment contract, by which defendants Radoff and/or Edgewater Beach Hotel, Inc.[2] agreed to give plaintiff Fisch the sole right and authority to find a purchaser for the Edgewater Beach Hotel, a property designated on the contract by a legal description of real property. Prior to executing the contract both sides were aware that the hotel was a corporate asset, ownership of which resided in Edgewater Beach, Inc., and that Burton Radoff was president of this corporation.
The pertinent terms of the contract and an addendum thereto provided that: (1) In return for his efforts to find a purchaser for the described property, plaintiff would have, for a nine month period, an exclusive right to find a purchaser, and, if the purchaser were ready, willing and able to buy, to receive a commission equal to six percent of the sale price; (2) The price would be $925,000, "or ... any other price and terms acceptable to the undersigned owner(s)"; (3) Defendants would enter a written contract with the purchaser plaintiff found "on a form the same as or similar to the Miami Beach Board of Realtors standard Deposit Receipt Agreement"; (4) Defendants had the right to cancel the agreement prior to its termination date upon payment of one-half the agreed brokerage *162 fee; and (5) Defendants would close or give occupancy within thirty days of execution of the Deposit Receipt Agreement "except as per attached addendum." The addendum provided that Edgewater Beach Hotel, Inc. would give possession only at certain times and by means of the transfer of all stock in that corporation to the purchaser. It further provided that the corporation would indemnify the purchaser against debts, liabilities, and claims of and to the corporation.
Fisch forwarded the listing to the Miami Beach Board of Realtors Multiple Listing Service. When published by this service, the listing incorrectly showed Radoff as sole owner of the property. Radoff tried to get the Board of Realtors to cancel the listing, but, since only the broker had authority to do this, a meeting was held among Fisch, his salespeople, and Radoff on August 12, 1974, at which Radoff asked Fisch to terminate the arrangement. Among other things, Radoff indicated that tax problems precluded transfer of the corporation's stock from his mother, sole owner thereof, to himself. No agreement was reached at this meeting.
On September 1, 1974, Radoff sent Fisch a letter cancelling the listing. The letter gave as a reason for the cancellation, lack of authority to have given the listing in the first place. Radoff contends he only cancelled the listing as published. Fisch understood the termination to go to the broker-principal relationship, and did no further work to locate a purchaser. No purchaser was found by Fisch. The action sub judice ensued, Fisch alleging breach of contract and seeking damages pursuant to the contract. After presentation of plaintiff's case in chief, the trial court granted a directed verdict in favor of defendants.
Appellant contends, first, that the contract provision was for liquidated damages and not a penalty since damages were not readily ascertainable at the time of contracting, and, second, that the evidence adduced at trial establishes, at minimum, a jury question as to whether there was a breach of contract.
Appellee contends that no valid contract existed for two reasons: first, because the contract violated the principles underlying Chapter 517, Florida Statutes (the Blue Sky Laws), since a sale of stock was contemplated and Fisch was not a registered dealer, and, second, because the contract was so incomplete as to be impossible to perform. Appellee further asserts that even if the contract were valid, it was never terminated, and that the damages clause was an unenforceable penalty since damages were ascertainable at the time of contracting.
Initially we note that Chapter 517, Florida Statutes, is irrelevant in this case. Fisch was not "in the business" of buying and selling securities, and thus was not a "dealer" as contemplated by Section 517.02(4). More importantly, the record reveals that both parties understood at the time of contracting that, although the means of accomplishing the sale of real property would be by transfer of corporate stock the substantive intent of their dealings was to effect the sale of real property. To argue the applicability of the Blue Sky Laws is to insert a non sequitur into the proceedings and we reject this contention.
We next reach appellee's assertion that the contract was impossible to perform. The contract at issue is an employment contract, not a sales contract. When a broker is employed to find a purchaser his is primarily a preliminary function concerned with the bringing together of the buyer and the seller. See generally Keyes Co. v. Dade County Bar Ass'n, 46 So.2d 605 (Fla. 1950). The fact that the details of the sale might be difficult or even impossible to work out between the seller and the ultimate buyer does not, as a matter of law, necessarily preclude the viability of a contract which merely grants a broker the right to a commission if and when he is able to produce a purchaser, for when knowledge of the facts which make performance impossible is available to a promisor at the time he makes the contract, he cannot later invoke impossibility as a defense. Shore Investment Co. v. Hotel Trinidad, 158 Fla. 682, 29 So.2d 696 (1947). See also Metropolitan *163 Dade County v. Babcock Company, 287 So.2d 139 (Fla.3d DCA 1973). The key to understanding this issue in this case is that plaintiff never contended that he had earned any commission because he never produced a purchaser ready, willing and able to buy the property. Cf. Falovitch v. Adrienne Realty, Inc., 345 So.2d 839 (Fla.3d DCA 1977). (When a failure of both the listing and the deposit receipt agreements to encompass the terms and conditions under which property owners are willing to sell occurs, the broker has not produced an able purchaser and is not entitled to a commission.) Here, plaintiff contends that he was denied the opportunity to perform by defendant's untimely breach, and is therefore entitled to damages pursuant to the employment contract between the parties. Since defendant's knowledge of the impossibility at the time of contracting precludes his assertion of the defense, impossibility does not bar plaintiff's cause of action for breach of contract.
Appellee also contends that the provision of the contract which permitted defendants to cancel prior to the agreed termination date upon payment of one-half the stated commission was a penalty clause. We disagree. In order for a liquidated damages clause to constitute a penalty, damages must be readily ascertainable at the time of the drawing of the contract. Hutchison v. Tompkins, 259 So.2d 129 (Fla. 1972). The contract herein at issue provided that the sales price was to be $925,000 or "any other price ... acceptable to the undersigned owner(s)... ." It is well known that the distance between asking price and accepted price in real estate transactions is often a long mile indeed. Thus, at the time this contract was drawn, one-half of the agreed commission was not readily ascertainable[3] and, as a matter of law, the clause should be construed as providing for liquidated damages.
Lastly, we reach appellee's assertion that the contract had not been terminated. He reasons that a condition precedent to termination was the payment of one-half the agreed commission, and since that payment had never been made, the contract had not been terminated. Appellant asserts that this argument confuses termination of the contract by compliance with its terms with breach of contract by non-compliance. In essence, the conflict lies in a determination of whether the evidence presented proves that the cancellation went to the incorrect listing only, or whether it went to the entire agreement between broker and principal, for if the cancellation went only to the published listing, the contract would not have been terminated.
The record reveals that evidence was presented which could lead to either conclusion. Thus it was error for the court to take from the jury its right to determine whether the contract expired at the end of nine months or whether defendants had prematurely cancelled the entire agreement between the parties. Parsons v. Reyes, 238 So.2d 561 (Fla. 1970); Guerriero v. Adams, 190 So.2d 432 (Fla.3d DCA 1966); Franklin v. Dade County, 230 So.2d 730 (Fla.3d DCA 1970); Ranger v. Avis Rent-A-Car System, Inc., 336 So.2d 467 (Fla.3d DCA 1976).
Reversed and remanded for a new trial.
NOTES
[1] The original complaint directed its allegations of breach of contract against the corporation only, while other allegations, later dropped, were directed at both the corporate and the individual defendants. The evidence relevant to the alleged breach of contract adduced at trial was directed against both defendants, and appellant, in his brief, noted an apparent intent to amend his pleadings to conform to the evidence in accord with Fla.R.Civ.P. 1.190. No objection was made at trial that the evidence was outside the scope of the pleadings as they stood at the time. Therefore we treat this appeal as going to a directed verdict in favor of both defendants.
[2] It remains to be decided whether either or both of the defendants may be liable on the contract.
[3] The Hutchison Court specifically receded from an earlier definition of "readily ascertainable" in so far as it would conflict with the rationale underlying its decision. That rationale was expressed as follows:

The better result ... is to allow the liquidated damage clause to stand if the damages are not readily ascertainable at the time the contract is drawn, but to permit equity to relieve against forfeiture if it appears unconscionable in light of the circumstances existing at the time of breach.
259 So.2d 129 at 132.