606 So.2d 669 (1992)
Norman Donnell KEYS, Appellant,
v.
STATE of Florida, Appellee.
No. 91-481.
District Court of Appeal of Florida, First District.
September 21, 1992.
Rehearing Denied October 14, 1992.
*670 Roberto A. Arias, Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen., and Charlie McCoy, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
Norman Donnell Keys appeals his conviction after a jury trial on charges of second-degree murder and aggravated assault. Of the five points Keys has raised on appeal, only three warrant discussion. We reverse for error in giving an instruction on flight and remand for a new trial.
Prior to the commission of the criminal offenses charged in this case, Keys was under a charge for possession of cocaine pending in the Duval County juvenile court. On May 22, 1990, while under restraint in the juvenile case, Keys signed a notice of intent to exercise his constitutional right to remain silent and right to counsel. The court appointed an attorney to represent him and released him. On July 15, 1990, the victim in the instant case was shot while standing at a telephone booth in Duval County. On August 2, 1990, while Keys was at large on the juvenile charge, Detective Ronald Smith questioned him about this shooting incident. Upon ending the interview, Detective Smith told Keys that he "would probably be back in touch with him." Thereafter, Detective Smith made several unsuccessful attempts to locate Keys. On August 20, 1990, Keys failed to appear in juvenile court for a pretrial conference on the possession of cocaine charge, and that court issued a custody warrant. The following day, Keys was arrested in Leon County on this warrant. Detective Smith was notified of the arrest, and he met with Keys on August 22 while Keys was being held by the Leon County authorities. At that time, Keys voluntarily signed a form waiving his rights and confessed to shooting the victim.
*671 Prior to trial, Keys filed a motion to suppress the confession on the ground that the notice of intent to exercise his right to remain silent and right to counsel that he had signed in connection with the juvenile charge also applied to the unrelated shooting incident. The trial court denied the motion, ruling that the break in custody by reason of his release by the juvenile court dissolved Keys' assertion of these rights.
Keys' first point on appeal argues that the trial court's denial of his motion to suppress his confession was reversible error because the notice filed in the juvenile court case was a clear expression of his desire to deal with police only through counsel under all circumstances, even on charges not related to the juvenile case. According to Keys, Detective Smith's interrogation regarding the shooting incident violated the rule set forth in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, rehearing denied, 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981). The state, in reply, asserts that the trial court correctly relied on Dunkins v. Thigpen, 854 F.2d 394 (11th Cir.1988), cert. denied, 489 U.S. 1059, 109 S.Ct. 1329, 103 L.Ed.2d 597 (1989), in ruling that Keys's assertion of his right to counsel in the juvenile case was dissolved when there was a break in custody. Keys counters this argument with the contention that the Supreme Court's decision in Minnick v. Mississippi, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), "rendered the Dunkins holding void and without precedential value." We reject Keys' argument on this point.
In Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, the Supreme Court held that an accused in custody who expresses a desire to deal with police only through counsel cannot be further interrogated by authorities until counsel has been made available to him, unless the accused himself initiates further communication. In Dunkins v. Thigpen, 854 F.2d 394, the Eleventh Circuit held that a break in custody after invocation of Fifth Amendment rights ends the need for the Edwards rule. Under the holding in Dunkins, a suspect may validly waive his Miranda rights after a break in custody even though he invoked such rights before a break in custody. 854 F.2d at 396-398. In Minnick v. Mississippi, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489, the Supreme Court held that the protection afforded by the rule in Edwards does not terminate once the suspect has consulted with counsel. According to Minnick, once counsel has been requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney. 498 U.S. at ___, 111 S.Ct. at 491, 112 L.Ed.2d at 498.
We do not accept appellant's overlybroad interpretation of Minnick. The suspect in Minnick was continuously in custody during all pertinent interrogations, and the Supreme Court did not address whether a break in custody dissolves a suspect's Edwards rights. Thus, on its face Minnick does not directly overrule the Dunkins holding. Furthermore, Dunkins is consistent with the Supreme Court's rulings in Arizona v. Roberson, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), and McNeil v. Wisconsin, ___ U.S. ___, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). In Roberson, the Supreme Court held that the Edwards rule applies even where the suspect is interrogated about an offense that is unrelated to the subject of the initial interrogation. Throughout the Roberson opinion, the Court emphasized that the accused was still in custody for the initial offense at the time he was questioned for the unrelated offense; thus, "the mere repetition of the Miranda warnings would not overcome the presumption of coercion that [was] created by the prolonged police custody." 486 U.S. at 686, 108 S.Ct. at 2100 (emphasis added). In McNeil, the Court was asked to decide whether an accused's invocation of his Sixth Amendment right to counsel during a judicial proceeding constitutes an invocation of his Fifth Amendment (Miranda) right to counsel. The Court stated that a defendant's Sixth Amendment right to counsel does not attach until a prosecution has commenced and it cannot be invoked for future prosecutions on unrelated charges; thus, it is "offense-specific." *672 Since Fifth Amendment rights are not offense-specific, once a suspect has invoked his Fifth Amendment rights during a custodial interrogation,
[i]f the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards.
___ U.S. at ___-___, 111 S.Ct. at 2208, 115 L.Ed.2d at 167-168 (emphasis added). As the above-quoted extract from the McNeil opinion indicates, the Supreme Court expressly noted that the Edwards rule should be applied in situations where there is no break in custody. Further, the Court noted that it had "never held that a person can invoke his Miranda rights anticipatorily... ." ___ U.S. at ___ n. 3, 111 S.Ct. at 2211 n. 3, 115 L.Ed.2d at 171 n. 3.
Because there was a break in custody between the time Keys asserted his Fifth Amendment rights in the juvenile case and his interrogation by Detective Smith in the instant case, we hold that the Edwards rule did not apply to Detective Smith's interrogation and that Keys' waiver of his Fifth Amendment rights in this case was effective. Thus, we affirm this point.
Keys' next point asserts that the trial court committed reversible error in refusing to give a portion of Florida Standard Criminal Jury Instruction 3.04(d) on the "Justifiable Use of Deadly Force." The requested portion of that instruction reads:
A person is justified in using force likely to cause death or great bodily harm if he reasonably believes that such force is necessary to prevent
1. imminent death or great bodily harm to himself or another, or
2. the imminent commission of (applicable forcible felony) against himself or another.
The court's instruction actually given to the jury was as follows:
A person is justified in using force likely to cause death or great bodily harm if he reasonably believes that such force is necessary to prevent eminent [sic] death or great bodily harm to himself or another.
The law in Florida is well settled that "a defendant is entitled to have the jury instructed on the rules of law applicable to his theory of defense if there is any evidence to support such instruction." Campbell v. State, 577 So.2d 932, 935 (Fla. 1991) (quoting Smith v. State, 424 So.2d 726, 732 (Fla. 1982), cert. denied, 462 U.S. 1145, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983)). See also Bagley v. State, 119 So.2d 400, 403 (Fla. 1st DCA 1960). In Croft v. State, 117 Fla. 832, 158 So. 454 (1935), the supreme court observed:
Where the trial court attempts to define the offense, for the commission of which an accused is being tried, it is the duty of the court to instruct the jury as to each and every essential element of the offense charged, and a charge attempting to define the offense which does not cover material elements of the offense is necessarily misleading and prejudicial to the accused. It is equivalent to directing the jury that it is not necessary for the state to prove any elements of the offense except those included in the definition given by the court.
158 So. 454, 455-456. In Motley v. State, 155 Fla. 545, 20 So.2d 798, 800 (1945), the supreme court further noted that "[t]he same would necessarily be true when the character of error is committed while charging on the law relative to the defense."
In this case, Keys testified that the victim pulled a gun and shot toward him, and that he pulled a gun and shot back at the victim because he was afraid for his life. Thus, evidence was presented to support the requested portion of the instruction on justifiable use of deadly force and the trial court erred in refusing to give that instruction in its entirety.
Although we find error in the failure to give the entire instruction, it is not necessary *673 to decide whether this error requires reversal or whether the error can be treated as harmless under the circumstances of this case, in view of our reversal and remand on the final issue next discussed. We point out this error for the purpose of preventing its repetition on retrial.
Keys' final point on appeal contends that the trial court committed reversible error in giving the following flight instruction to the jury:
If you find that the defendant in any way endeavored to escape or evade threatened apprehension by flight from the vicinity, concealment or other after the fact evasion of a desire to evade (sic) apprehension or prosecution, such fact may be considered by you as one of a series of circumstances from which a consciousness of guilt may be inferred.
We agree that the giving of this instruction was reversible error under the circumstances shown in this record.
The critical feature of the instruction so given is that the jury may infer "a consciousness of guilt" from an endeavor "to escape or evade threatened apprehension by flight from the vicinity." On its face the instruction is legally insufficient because it permits the jury to draw the inference from a threat of apprehension on any criminal charge and does not limit the threat of apprehension to the charge involved in the instant case. In any event, however, unless the latter fact  that Keys endeavored to escape or evade threatened apprehension of attempting to murder the victim in this case  is conclusively established on this record by direct testimony or by circumstantial evidence that excludes any other reasonable inference or theory, the instruction requires the jury to impermissibly pyramid inferences.
Florida courts have long adhered to the rule proscribing the fact-finder from basing an inference upon an inference in order to arrive at a conclusion of fact. See Chestnut v. Robinson, 85 Fla. 87, 95 So. 428 (1923); Mutual Life Ins. Co. v. Johnson, 122 Fla. 567, 166 So. 442 (1935); Voelker v. Combined Ins. Co. of America, 73 So.2d 403 (Fla. 1954); Sirmons v. Pittman, 138 So.2d 765 (Fla. 1st DCA 1962). The purpose of this rule is to protect against verdicts or judgments based upon speculation. Voelker v. Combined Ins. Co. of America, 73 So.2d at 407. See also Sirmons v. Pittman, 138 So.2d 765, 771 (An inference recognizable in law cannot be based upon evidence that is so uncertain or speculative as to raise merely a conjecture or possibility.) In criminal cases, the rule has been stated thusly:
Where two or more inferences in regard to the existence of criminal intent and criminal acts must be drawn from the evidence and then pyramided to prove the offense charged, the evidence lacks the conclusive nature to support the conviction.
Collins v. State, 438 So.2d 1036 (Fla. 2d DCA 1983). See also Weeks v. State, 492 So.2d 719 (1st DCA 1986), rev. dismissed, 503 So.2d 328 (Fla. 1987) (Circumstantial evidence is not sufficient when it requires pyramiding of inferences to arrive at a conclusion of guilt.). An exception to the rule has been recognized where the basic inference is established to the exclusion of any other reasonable inference or theory. Voelker v. Combined Ins. Co. of America, 73 So.2d 403, 407. Thus, if no reasonable inference contrary to the base inference may be indulged, the base inference may be elevated to the dignity of an established fact for the purpose of drawing further inferences. Franklin v. Dade County, 230 So.2d 730 (Fla. 3d DCA), cert. denied, 237 So.2d 761 (Fla. 1970). See also Busbee v. Quarrier, 172 So.2d 17 (Fla. 1st DCA), cert. denied, 177 So.2d 474 (Fla. 1965) ("It is well established in this jurisdiction that when circumstantial evidence is relied on in a civil case, the particular inference relied on to establish the fact must outweigh all contrary inferences to such an extent as to amount to a preponderance of all reasonable inferences that might be drawn from the same circumstances."); Gaidymowicz v. Winn-Dixie Stores, Inc., 371 So.2d 212 (Fla. 3d DCA 1979) (To use one inference as a basis for another inference, the first inference must outweigh all reasonable inferences to the contrary.).
*674 For the jury to follow the flight instruction given in this case, the jury would necessarily have to pyramid inferences in view of the circumstances shown in this record regarding Keys' presence in Leon County. To establish the predicate or base inference, the jury would have to infer from the fact of Keys' presence in Leon County that Keys was here solely for the purpose of avoiding further interrogation and prosecution in Duval County for the shooting incident discussed in that interview. Then, the jury would have to further infer from that base inference that Keys fled to avoid further interrogation because he knew he was guilty of that charge. But the state did not present any evidence whatsoever showing Keys' reason for being in Leon County; the state only presented evidence of the fact that Keys was in Leon County. Based on other evidence in the record, it was equally as plausible to infer that Keys came to Leon County for the purpose of evading prosecution on the juvenile court charge of possession of cocaine that gave rise to the warrant on which he was arrested, rather than to evade a potential attempted murder charge. Indeed, one could reasonably speculate or infer any number of reasons why Keys came to Leon County, e.g., to conduct business or to visit a friend. The base inference that must be drawn from the fact that Keys was found in Leon County, i.e., that he was here to avoid interrogation and prosecution on the attempted murder charge, was not established by the state's proof to the exclusion of any other reasonable inference or theory. Hence, the trial court's flight instruction erroneously elevated the base inference, from which the jury was to draw the ultimate inference of guilt, to the dignity of an established fact notwithstanding other reasonable inferences permissible under the circumstances proven in this record, resulting in the impermissible pyramiding of inferences. See Voelker v. Combines Ins. Co. of America, 73 So.2d 403, 407; Franklin v. Dade County, 230 So.2d 730.
The Florida Supreme Court recently ruled that flight instructions may no longer be given. The court stated:
In reconsidering the flight instruction, we can think of no valid policy reason why a trial judge should be permitted to comment on evidence of flight as opposed to any other evidence adduced at trial. Indeed, the instruction has long been eliminated from the Florida Standard Jury Instructions in Criminal Cases, apparently in an effort to eliminate "language which might be construed as a comment on the evidence."
Fenelon v. State, 594 So.2d 292 (Fla. 1992). Our decision in this case follows that decision as mandated in Smith v. State, 598 So.2d 1063 (Fla. 1992). See also Viniegra v. State, 604 So.2d 863 (Fla. 3d DCA 1992); Bryant v. State, 602 So.2d 966 (Fla. 3d DCA 1992). Thus, on this stated ground alone, we hold that the giving of the flight instruction requires remand for a new trial.
The two remaining points, appellant having conceded one of them, are affirmed without discussion.
AFFIRMED in part, REVERSED in part, and REMANDED.
WEBSTER, J., concurs.
MINER, J., specially concurs with opinion.
MINER, Judge, concurring specially.
On the record before us, I agree that this case must be reversed because I cannot conclude that the erroneous giving of the flight instruction below was harmless. See Fenelon v. State, 594 So.2d 292 (Fla. 1992); Smith v. State, 598 So.2d 1063 (Fla. 1992); Viniegra v. State, 604 So.2d 863 (Fla. 3rd DCA 1992) and Bryant v. State, 602 So.2d 966 (Fla. 3rd DCA 1992). In my view, we need not reach and I express no opinion on the issue of whether the evidence below would have justified the giving of such an instruction but for Fenelon and its progeny.